**NORTH RIDGE CORPORATION,**
Appellant,

v.

**Marc W. WALRAVEN and Clysta
T. Walraven, Appellees.**

**No. 11–96–254–CV.**

Court of Appeals of Texas,
Eastland.

Oct. 30, 1997.

Opinion Overruling Rehearing in Part
and Granting Rehearing in Part Dec. 18,
1997.

---

**2.** Tex.R.App. P. 44.2 is the equivalent rule in the Rules of Appellate Procedure which became effective September 1, 1997.

J. Stephen Gibson, McCauley MacDonald & Devin, R. Brent Cooper, Stevens D. Roberts, Cooper Aldous & Scully, Dallas, Ben D. Sudderth, Law Office of Ben D. Sudderth, C.H. McCall, Comanche, for Appellant.

Allison K. Chandler, Joseph W. Spence, John C. Nabors, Cynthia Hollingsworth, Gardere & Wynne, LLP, Dallas, Phillip Sanov, Saul Pullman, Eastland, for Appellees.

Before ARNOT, C.J., DICKENSON, J., and McCLOUD, Senior Justice.[1]

## OPINION

McCLOUD, Senior Justice (Retired).

This is a suit for alleged temporary injuries to real property caused by separate unrelated spills of crude oil and saltwater. Marc W. Walraven and Clysta T. Walraven, the landowners, sued North Ridge Corporation, the surface lessee, alleging negligence, nuisance, and breach of implied covenants. The jury awarded plaintiffs actual damages of $509,000 and exemplary damages of $150,000. The jury also awarded plaintiffs attorney's fees of 33 1/3 percent of the total recovery. Defendant appeals. We reverse and remand.

In 1982, Sun Exploration and Production Company entered into a surface lease agreement with Joe Walraven to lease a one-acre tract which was part of a 100–acre tract owned by Joe Walraven.[2] Sun also acquired pipeline easements across the 100–acre tract. The one-acre tract was used by Sun as a gathering facility in the operation of Sun's North Central Ranger Unit. Sun conveyed its interest in the Walraven surface lease to defendant which, since January of 1989, has operated the gathering facility and has been responsible for the pipelines on the 100–acre tract.

Approximately one surface acre of agricultural land in the 100–acre tract was damaged from the oil and saltwater spills. Plaintiffs urge that the proper measure of damages, as found by the jury, was the cost to restore the land to the condition it was in before the contamination. Plaintiffs' expert witness testified that it would cost $510,000 to excavate all of the contaminated soil and replace the damaged soil with clean reseeded soil.

The gathering facility served as an intersection for a number of pipelines and was surrounded by a raised berm or dike which would retain fluids that might otherwise es-

1. Austin McCloud, Retired Chief Justice, Court of Appeals, 11th District of Texas at Eastland sitting by assignment.

2. Joe Walraven is the former husband of Clysta Walraven. As part of a divorce settlement, Joe Walraven conveyed the 100–acre tract in issue to Clysta, and she later conveyed a one-half interest in the property to their son, Marc Walraven.

cape in the event of a leak from the tanks or pipeline manifolds. Plaintiffs contend that defendant's supervisor instructed defendant's employees to cut the berm and that oil and other substances escaped from the enclosed berm and contaminated plaintiffs' land.

The jury found in Question No. 5 that the cut in the berm in the gathering facility occurred prior to October 3, 1989. Plaintiffs filed their original petition on May 22, 1992. Damages for temporary injuries to land may be recovered for the two years prior to filing suit. TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a) (Vernon Supp.1997); *Bayouth v. Lion Oil Company*, 671 S.W.2d 867 (Tex.1984). Temporary damages sustained more than two years before the date suit was filed are barred by limitations. *Yancy v. City of Tyler*, 836 S.W.2d 337 (Tex.App.— Tyler 1992, writ den'd); *City of Odessa v. Bell*, 787 S.W.2d 525, 530 (Tex.App.—El Paso 1990, no writ). In Question No. 6, the jury found that plaintiffs neither discovered nor should have discovered in the exercise of reasonable diligence the cut in the berm in the gathering facility prior to April of 1991.

▮ Defendant urges in its second point of error that the trial court erred in overruling its objection to the submission of the issue regarding the discovery rule exception to their limitations defense because such avoidance was unsupported by plaintiffs' pleadings. We agree. The discovery rule is a plea in confession and avoidance that is waived if not raised by the pleadings. *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515 (Tex.1988). The trial court, over defendant's objection, erroneously submitted Question No. 6 to the jury. TEX.R.CIV.P. 278; *Roark v. Stallworth Oil and Gas, Inc.*, 813 S.W.2d 492 (Tex.1991); *Matthews v. General Accident Fire & Life Assurance Corp.*, 161 Tex. 622, 343 S.W.2d 251 (1961); *Harkey v. Texas Employers' Ins. Ass'n*, 146 Tex. 504, 208 S.W.2d 919 (1948); *Texas General Indemnity Company v. Ellis*, 888 S.W.2d 830 (Tex.App.—Tyler 1994, no writ); *Mexico's Industries, Inc. v. Banco Mexico Somex*, 858 S.W.2d 577 (Tex.App.—El Paso 1993, writ den'd); *Atlantic Richfield Company v. Misty Products, Inc.*, 820 S.W.2d 414

(Tex.App.—Houston [14th Dist.] 1992, writ den'd).

The alleged intentional cutting of the berm by defendant's employees was a significant part of plaintiffs' suit. Marc Walraven testified that David Dennis Gaines, a field supervisor for defendant, told him that, during a period of heavy rain, Bill Bilhartz, Gaines' supervisor, told Gaines to cut the berm and let the fluid in the berm drain.

Gaines, who was no longer employed by defendant at the time of trial, testified that they had been using a vacuum truck to remove water from the bermed area during several days of rain. Gaines talked to Dale Bilhartz, his immediate supervisor, and told him that they were going to have to get another vacuum truck to get the water out of the bermed area. Gaines stated that Dale Bilhartz told him to tell Tony Wells, defendant's employee who was working with Gaines, to cut the dike. Wells then cut the dike or berm.

We note that plaintiffs cite this testimony in their brief to support the award of $150,-000 in exemplary damages as found by the jury. Also, Marc Walraven testified that the intentional cutting of the berm supported his claim that the conduct of the defendant was motivated by defendant's conscious or reckless disregard for the rights of others' safety, health, and welfare. More importantly, the damage issue as to the cost to repair plaintiffs' property which the jury answered "$509,000" was global and included all damages. The individual and separate oil or saltwater spills were not segregated.

▮ The jury found that the cut in the berm occurred prior to October 3, 1989. This claim was barred by the two-year limitations period unless the court properly submitted Question No. 6, the discovery question. The court erroneously submitted Question No. 6 because there were no pleadings to support the submission of the discovery question. We hold, contrary to plaintiffs' argument, that this error was harmful. The error amounted to such a denial of the rights of defendant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment. Former TEX.R.APP.P. 81(b)(1); see now TEX.

R.APP.P. 44.1. We sustain defendant's second point of error.

■ We also sustain defendant's Point of Error No. 8 wherein the defendant contends that the court erred in not granting its motion to modify the judgment and disregard jury findings because the evidence conclusively established that the repairs in the amount of $509,000 were not "economically feasible." The record indicates that the cost of excavating the damaged soil and replacing it with clean reseeded soil exceeded the maximum value of the entire 100–acre tract by more than six times. We hold that as a matter of law the proposed repairs to plaintiffs' property were not "economically feasible." See *Atlas Chemical Industries, Inc. v. Anderson,* 514 S.W.2d 309 (Tex.Civ.App.—Texarkana 1974), *aff'd,* 524 S.W.2d 681 (Tex. 1975), where the court of appeals stated:

> The correct measure of damages to the land in this case was the diminution in fair market value, because the cost of restoration ($45,000.00) was well in excess of the diminution in fair market value. Ordinarily, the diminution in fair market value is a measure to be applied when cost of restoration exceeds the diminution in fair market value. 25 C.J.S. Damages § 84. See *Superior Const. Co. v. Elmo,* 204 Md. 1, 102 A.2d 739 (1954); *Bana v. Pittsburgh Plate Glass Co.,* [76 N.E.2d 625 (Ct.App. Ohio 1947) ]; *Pacific Express Co. v. Lasker Real Estate Ass'n,* 81 Tex. 81, 16 S.W. 792 (1891).

See also *Forbau v. Producers Gas Company,* 601 S.W.2d 550 (Tex.Civ.App.—Amarillo 1980, no writ); 1 HOWARD R. WILLIAMS & CHARLES J. MEYERS, OIL AND GAS LAW § 217 (1996).

The "economically feasible" language used in the court's charge comes from a statement in *Sadler v. Duvall,* 815 S.W.2d 285 (Tex. App.—Texarkana 1991, writ den'd), wherein the court stated:

> When an injury to land is temporary, that is, able to be remedied at reasonable expense, the proper measure of damages is the cost of restoration to its condition immediately preceding the injury. However, in absence of proof that repair is actually or economically feasible, the injury may be deemed to be permanent.

In determining whether an injury to land is permanent or temporary, the court in *Kraft v. Langford,* 565 S.W.2d 223 (Tex.1978), stated:

> The character of an injury as either permanent or temporary is determined by its continuum. Permanent injuries are those which are constant and continuous, not intermittent or recurrent. *Atlas Chemical Industries, Inc. v. Anderson,* supra. Temporary injuries are those which are not continuous but are "sporadic and contingent upon some irregular force such as rain." *Id.* Another characteristic of a temporary injury is the ability of a court of equity to enjoin the injury causing activity. An injury which can be terminated cannot be a permanent injury. The concepts of temporary and permanent injuries are mutually exclusive and damages for both may not be recovered in the same action.[3]

The court added:

> The type of compensation to be awarded for an injury to real property is not invariable, but will depend upon the nature of the injury. See, *Atlas Chemical Industries, Inc. v. Anderson,* 524 S.W.2d 681 (Tex.1975); see, generally, 25 C.J.S. Damages § 84 (1966). Permanent injuries give rise to a cause of action for permanent damages, normally measured as the difference in the value of the property before and after the injury. See, e.g., *Fort Worth & D.C. Ry. Co. v. Hogsett,* 67 Tex. 685, 4 S.W. 365 (1887). Temporary injuries, on the other hand, give rise to a cause of action for temporary damages, the proper measure of which is the amount of "damages which have accrued during the continuance of the injury covered by the period for which the action is brought." *Lone Star Gas Co. v. Hutton,* 58 S.W.2d 19, 21 (Tex. Comm.App.1933, holding approved).

See also *Bayouth v. Lion Oil Company,* supra.

---

**3.** Following the definitions contained in *Kraft,* we seriously question whether all of plaintiffs' alleged separate injuries to their land were temporary as opposed to permanent.

We also note that the Texarkana Court of Appeals decided both *Atlas Chemical Industries* and *Sadler*. The court in *Sadler* did not disapprove of the earlier above-quoted statement made in *Atlas Chemical Industries*.

Here, as in *Atlas Chemical Industries*, the proper measure of damages was the diminution in fair market value because the cost of restoration was "well in excess" of the diminution in fair market value. The $509,000 found by the jury as damages for restoring the land was disproportionate to the diminution in the value of plaintiffs' land. See RESTATEMENT (SECOND) TORTS § 929 cmt. b (1982).

■ We also agree with defendant's contention that the trial court erred in not permitting defendant to show the condition of the east 15 acres of plaintiffs' 100–acre tract. On the day of trial, plaintiffs amended their pleadings and only sought damages for injuries to 85 acres of the 100–acre tract. Defendant's bill of exceptions reveals that Joe Walraven, who was in the oil field service business, used the "east end" of the 100–acre tract for cleaning out "frac tanks." Hazardous materials, cadmium, arsenic, toluene, lead, and chromium, were found in and on the east 15 acres that were excluded from plaintiffs' claims. This testimony was excluded on the ground that it was not relevant and, if relevant, would be prejudicial.

This case was tried on the theory of economic feasibility. To determine whether restoration was feasible or reasonable, it would be essential to determine the market value of the 100–acre tract in question. The question of economic feasibility and the difference in market value both concern the value of the property as a whole, not selected parts of the property. Otherwise, it would be permissible for a claimant to inflate the overall value of property by severing off those portions that make the tract less valuable. Furthermore, Marc Walraven testified that, if the defendant had not contaminated his property, Walraven would have been able to use the property "with confidence," sell the property, or leave it to his children in an uncontaminated condition. The jury should have been told that the east 15 acres of the 100–acre tract was contaminated with hazardous materials. We hold that the trial court abused its discretion when it excluded evidence regarding the condition of the soil on the east 15 acres of the 100–acre tract. TEX.R.CIV.EVID. 403. This error was also harmful. Former TEX.R.APP.P. 81(b)(1); see now TEX.R.APP.P. 44.1.

■ We further hold that the trial court erred when it refused to permit the defendant's expert to give his opinion as to the market value of the land before the contamination by defendant. In order for the jury to properly determine if it was "economically feasible" to "repair" the land, the jury should consider evidence of the difference in the value of the land before and after the injury. See *Atlas Chemical Industries, Inc. v. Anderson*, 514 S.W.2d 309 (Tex.Civ.App.— Texarkana 1974), *aff'd*, 524 S.W.2d 681 (Tex. 1975). We hold that the trial court abused its discretion when it excluded the evidence and that the error was harmful. TEX. R.CIV.EVID. 403; former TEX.R.APP.P. 81(b)(1); see now TEX.R.APP.P. 44.1.

We have not considered defendant's remaining points of error because they are unnecessary to a final disposition of this appeal. Former TEX.R.APP.P. 90(a); see now TEX.R.APP.P. 47.1.

The judgment of the trial court is reversed, and the cause is remanded to the trial court for a new trial.

### On Plaintiffs' and Defendant's Motions for Rehearing

Plaintiffs assert as an additional point of error in their amended motion for rehearing that this court erred in its original opinion by reversing that part of the trial court's judgment ordering defendant to permanently remove from plaintiffs' land:

[A]ll of its personal property, improvements and equipment, except for pipelines installed pursuant to specific easements, that are not specifically located upon the one acre tract lease granted to defendant, described in the lease as follows, to-wit:

A one (1) acre tract of land in the form of a square adjacent to and north of State Highway No. 101. The South-east

corner of said one acre is 535 feet more or less west of the center line of [C]olony Creek, said one acre tract of land being all out of the W.H. Ahrenbeck Survey, Abs. 4 and being out of a 100 acre tract now owned by Joe L. Walraven as recorded in Volume 660, Page 59 in the Deed Records of Eastland County, Texas.

The record reflects that some of defendant's property and equipment that was used in connection with the gathering facility were not located within the boundaries of the one-acre tract leased to Sun Exploration by Joe Walraven in 1982. The jury found that this constituted a trespass but awarded plaintiffs no damages for the trespass. The jury found that plaintiffs were not estopped from claiming that defendant trespassed. Defendant urged in Point of Error No. 17 that the evidence conclusively established every element of estoppel. We disagree with defendant's contention. The evidence reveals that it was a proper question for the jury, and the jury found against defendant.

Plaintiffs urge in their amended point of error that defendant did not properly challenge that part of the trial court's judgment granting specific performance as to the trespass claim. Defendant answers that the matter is moot because defendant has already complied with the trial court's injunction.

We affirm that part of the trial court's judgment based upon the trespass finding by the jury, copied above, ordering defendant to remove from plaintiffs' land all of defendant's personal property, improvements, and equipment (except for authorized pipelines) that are not specifically located upon the leased one-acre tract. In all other respects, the judgment of the trial court is reversed, and the cause is remanded to the trial court for a new trial.

Defendant's motion for rehearing is overruled. Plaintiffs' motion for rehearing is granted in part and overruled in part.