11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Primrose Operating Company, Inc.

Appellant

Vs.                   No.
11-03-00131-CV -- Appeal from Scurry County

Wilford C. Senn and Wanda Joan Senn

Appellees

 

Wilford C. Senn and Wanda Joan Senn brought suit
against various oil companies for the alleged contamination of the Senns= real property, the Covered AS@
Ranch.  The only defendant remaining in
the suit at the time of trial was Primrose Operating Company, Inc.  The jury found that Primrose had negligently
caused contamination to the surface of the ranch, that the cost to clean up the
contamination was $2,110,000, that the diminution in fair market value of the
ranch due to Primrose=s
contamination was $2,110,000, that Primrose acted with malice, and that
exemplary damages should be assessed against Primrose.  The trial court entered judgment on the jury=s verdict, awarding the Senns
$2,110,000 in actual damages, over $880,000 for prejudgment interest, and
$86,000 as punitive damages.  We reverse
and render.  








Primrose presents nine issues for appellate
review.  In the first issue, Primrose
contends that the trial court abused its discretion in granting a partial new trial
to the Senns.  The record shows that this
appeal resulted from the second jury trial of this case.  After the first trial resulted in a
take-nothing judgment in favor of Primrose, the trial court granted in part the
Senns= motion
for new trial and limited the retrial to the issue of Primrose=s liability for surface damages.  The trial court judge stated in his order
that he was granting the new trial Ain
the interests of justice and fairness.@  In a letter to the parties, the trial judge
stated that he was convinced that the jury disregarded their oath even though
the jury reached an arguably just result. 
A trial court=s
decision to grant a new trial in a civil case, if rendered during the trial
court=s plenary
power, is not reviewable on appeal.  Cummins
v. Paisan Construction Company, 682 S.W.2d 235 (Tex.1984); Bay, Inc. v.
Ramos, 139 S.W.3d 322, 331 (Tex.App. - San Antonio 2004, pet=n filed).[1]  Consequently, we cannot disturb the trial
court=s
decision to grant the partial new trial in this case.  The first issue is overruled.  

In its fourth and fifth issues, Primrose
challenges the $2,110,000 findings made by the jury in answer to questions
regarding the cost of cleanup and the diminution in fair market value.  Primrose asserts that these damage findings
were based upon unscientific evidence, were excessive, and were not supported
by legally or factually sufficient evidence. 
The Senns had the burden of proof on these questions.  Therefore, in order to address Primrose=s legal sufficiency/no‑evidence
challenges, we must consider only the evidence and inferences that tend to
support the findings, disregarding any evidence or inferences to the
contrary.  Southwest Key Program, Inc.
v. Gil‑Perez, 81 S.W.3d 269, 274 (Tex.2002);  Garza v. Alviar, 395 S.W.2d 821, 823
(Tex.1965);  see Merrell Dow
Pharmaceuticals, Inc. v. Havner, 953 S.W.2d 706, 711 (Tex.1997), cert.
den=d,
523 U.S. 1119 (1998).  We may sustain a
no‑evidence challenge only if one of the following circumstances exists:
(1) the record discloses a complete absence of evidence of a vital fact, (2)
the court is barred by rules of law or of evidence from giving weight to the
only evidence offered to prove a vital fact, (3) the only evidence offered to
prove a vital fact is no more than a mere scintilla, or (4) the evidence
conclusively establishes the opposite of the vital fact.  Merrell Dow Pharmaceuticals, Inc. v.
Havner, supra at 711 (citing Robert W. Calvert, ANo
Evidence@ and AInsufficient Evidence@ Points of Error, 38 TEX. L. REV.
361, 362‑63 (1960)).  If there is
any evidence of probative force to support the finding, we must overrule the no‑evidence
point.  Juliette Fowler Homes, Inc. v.
Welch Associates, Inc., 793 S.W.2d 660, 666 (Tex.1990);  In re King=s
Estate, 244 S.W.2d 660 (Tex.1951).  








In a case in which a surface owner asserts a claim
for damage to his land caused by another=s
negligence, the type of compensation to be awarded depends on the nature of the
injury.  North Ridge Corporation v.
Walraven, 957 S.W.2d 116, 119 (Tex.App. - Eastland 1997, pet=n den=d).  Where the injury is temporary and able to be
remedied at reasonable expense, damages are measured by the cost of restoring
the land to its condition prior to the injury. 
North Ridge Corporation v. Walraven, supra.  If the cost to restore the land is excessive
or not economically feasible, the injury may be deemed to be permanent.  North Ridge Corporation v. Walraven, supra.  In the case of permanent injuries, the
appropriate measure of damages is the diminution in fair market value.  North Ridge Corporation v. Walraven, supra.  The concepts of temporary and permanent
injuries are mutually exclusive.  Kraft
v. Langford, 565 S.W.2d 223 (Tex.1978). 
Consequently, damages for both may not be recovered in the same
action.  Kraft v. Langford, supra.  








We hold as a matter of law that the cost to
restore the land to its condition prior to the leaks at issue in this case is
not reasonable and that the repairs are, thus, not Aeconomically
feasible.@  See North Ridge Corporation v. Walraven,
supra; Atlas Chemical Industries, Inc. v. Anderson, 514 S.W.2d 309
(Tex.Civ.App. - Texarkana 1974), aff=d,
524 S.W.2d 681 (Tex.1975).  The record
shows that Primrose owned an oil and gas lease covering about 3,000 acres of
the Senns=
23,013-acre ranch.  The Senns purchased
the surface only of the ranch in June 1997 for $3,164,000.  The ranch has been subject to various leases
and to oil and gas production since 1939 when the discovery well was
drilled.  When the Senns purchased the
ranch, hundreds of wells had been drilled on the leased portion of the ranch,
and thousands of miles of flow lines crossed the area.  According to Wilford Senn (Senn), 500-600
wells were located on his ranch, with approximately 200 of those belonging to
Primrose.  Primrose began its operations
on the ranch in 1992 and vacated the premises in December 1999 when it sold its
interest to another company.  Sometime
after the Senns purchased the ranch, Senn instructed his ranch foreman, Rudy
Gonzalez, to photograph any leaks or spills that he observed and to report
those leaks and spills to Eddie W. Seay, a regulatory environmental consultant
hired by Senn.  Senn also hired a
chemist, Greg Bybee, to take soil samples of these sites, test for
contaminants, and determine the cost of remediation.  The samples taken of the 86 Primrose spill
sites, which were mostly leaks from flow lines, showed high levels of petroleum
hydrocarbons and/or chlorides from the oil and saltwater.  According to the Senns=
experts, Primrose failed to properly clean up the spill sites.[2]  The record showed that the spill sites had
not adequately revegetated by the time of trial, but there was no showing that
the spill sites resulted in any hazard to human or animal life or even that the
sites interfered with Senns=
use of the ranch.  The Senns= experts testified that the soil in
those spill sites, which covered a total of approximately 10 acres but were
spread out across the area, needed to be remediated by digging out the
contaminated dirt, hauling it to a land farm, and replacing the contaminated
dirt with clean soil.  Bybee testified
that the cost of such remediation would be $2,110,000.  

Various witnesses testified regarding the value of
the Senns=
ranch.  When Senn purchased the ranch in
June 1997 for $3,164,000, there were some old spills and some oil operation
damage.  At the time of purchase, the
appraised value was a little over $3,100,000. 
In July 1998 and again in February 2000, Senn swore in his financial
statements that the ranch was worth $3,600,000. 
In May 2000, Senn swore in another financial statement that the ranch
was worth $4,200,000.  Also in May 2000,
Lee Sam Middleton, a real estate broker and appraiser hired by the Senns,
appraised the ranch with improvements at $4,275,000.  When Middleton inspected and appraised the
ranch in 1997 and in 2000, he knew that there had been oil field activity on
the ranch, but he appraised the ranch as if it were unaffected by environmental
hazards.  Middleton testified that, at
the time of the appraisals, he was not aware of any environmental hazards that
needed to be cleaned up.  Middleton
further testified that, if the Senns=
ranch is contaminated and if the cost to clean up the contamination is
$2,110,000, then the fair market value of the ranch would be diminished by
$2,110,000 -- the Acost to
cure.@  Middleton testified that the evaluation
should be based upon the cost to cure.  








Steven Rogers, a real estate appraiser from
Amarillo, appraised the Senns=
ranch in March 2001 and October 2002. 
Rogers testified that, if the ranch were environmentally clean, it would
have been valued at $4,500,000 and $4,800,000 on those dates, respectively.  Rogers testified that he reviewed the report
prepared by Seay and Bybee regarding soil contamination on the ranch and that,
based upon that study, Rogers believed that the market value of the ranch would
be diminished by both the cost to cure, $2,110,000, and by the negative stigma
attached to the contamination, $420,000. 
According to Rogers, stigma is Athe
resistance of the market place to the purchase, or under a more likely
description, it is a margin that...any purchaser of the property would like to
have above the actual cost to clean up.@  The stigma value is attached because the cost
to cure is generally imprecise and may cost more than expected.  Rogers testified that he allotted 20 percent
of the cost to cure as stigma.  After
allowing for both the improvements made by the Senns and the deductions for the
stigma and the cost to cure, Rogers valued the ranch at $2,500,000.  On cross-examination, Rogers admitted that
the authoritative literature that he uses to appraise land provides that not
all hazardous substances result in contamination; that, even if contamination
does occur, the contami-nation does not necessarily create an environmental
risk; and that, even if contamination results in an environmental impact or environmental
risk, there is not necessarily an impact on the marketability of the real
estate.  

Middleton and Rogers testified at trial about the
recent sale of another nearby ranch. 
That ranch, despite 25 percent of its 19,000 acres being subject to oil
and gas activity, sold for $217-218 per acre. 
Middleton testified that the Senns=
ranch was superior in comparison.[3]  The record also showed that Scurry County,
where the Senns= ranch is
located, is and has been one of the top producing counties for oil and gas in
the United States.  

The only other witness to testify regarding market
value was Clint Bumguardner, a real estate appraiser hired by Primrose.  Bumguardner testified that he did not use the
cost to cure in appraising the Senns=
ranch.  According to Bumguardner, the
cost to cure was not appropriate in this case because the oil field activity on
the Senns= ranch
was typical for that area of Texas and did not impact the property and because
cost to cure is only utilized when it is economically feasible.  Bumguardner did not find that the market
value of the Senns= ranch
had diminished in value because of Primrose=s
activities.  Bumguardner did not attach
any stigma loss to the Senns=
ranch because it continued to thrive and be used as a ranch, which was the
highest and best use of that property. 
Also, according to Bumguardner, the market for similar ranches reflected
that there was no stigma attached to the oil field activity.  On June 15, 2001, Bumguardner appraised the
ranch=s fair
market value considering comparable ranch sales and the oil field activity at
$175 per acre for a total of $4,025,000. 









We hold as a matter of law that the cost to
restore the land to its condition prior to the leaks at issue in this case is
not reasonable and that the repairs are, thus, not Aeconomically
feasible.@  See North Ridge Corporation v. Walraven,
supra; Atlas Chemical Industries, Inc. v. Anderson, supra.  Accordingly, whether injury was temporary or
permanent, the proper measure of damages in this case was the diminution in
fair market value.  See North Ridge
Corporation v. Walraven, supra.  That
issue was addressed during the trial and was submitted to the jury.  In accord with the testimony of Senns= experts, the jury found that the
diminution in fair market value was $2,110,000. 
However, the only evidence in support of that figure was the testimony
that the market value had diminished by $2,110,000 because that was the cost to
cure -- the amount of money that would have to be expended to remediate
Primrose=s spill
sites and return them to an uncontaminated condition.  

First, we are barred from considering that
evidence because the cost to cure is an improper measure of damages in this
case.  The $2,110,000 that it would cost
to excavate, haul, and replace the soil on 10 acres of a ranch on which oil and
gas producers have been operating for approximately 60 years is not
economically feasible.  Even the $420,000
stigma amount suggested by Rogers was based upon the cost to cure.  Rogers estimated that amount as 20 percent of
the cost to cure because the cost to cure is often imprecise.  

Second, the testimony of Senns= experts regarding the diminished
market value did not take into account the fact that the land was not pristine
when the Senns purchased the ranch.  The
Senns purchased the land Aas
is@ after observing old spills and some
damage from oil and gas operations.  As
shown by uncontroverted testimony, some leaks and spills are inevitable.  At the time of the Senns= purchase, the oil field located on
their ranch was very mature.  The flow
lines that leaked while Primrose conducted its activities on the ranch had been
on the same right-of-ways since the 1940s and 1950s.  Furthermore, prior to being banned by the
Railroad Commission, open saltwater disposal pits had been located on the Senns= ranch. 


While we do not condone Primrose=s failure to adequately clean up the
sites immediately when the cost would have been much less, we hold that the
Senns have failed to produce any evidence that their ranch diminished in value
because of Primrose=s
negligence.  The fifth issue is
sustained, and the remaining issues need not be addressed.  TEX.R.APP.P. 47.1.  Because the Senns failed to provide any
competent evidence of an essential element of their cause of action, we must
reverse the judgment of the trial court and render judgment in favor of
Primrose.  See Kerr-McGee Corporation
v. Helton, 133 S.W.3d 245, 258-60 (Tex.2004).  

The judgment of the trial court is reversed, and
we render judgment that the Senns take nothing from Primrose.  

 

W. G. ARNOT, III

CHIEF JUSTICE 

March 31, 2005

Panel
consists of:  Arnot, C.J., and

Wright,
J., and McCall, J. 











[1]We note that the Texas Supreme Court recently had an
opportunity to reexamine this issue but that it did not do so and, instead,
reversed on other grounds.  Volkswagen
of America, Inc. v. Ramirez, ___ S.W.3d ___, 2004 WL 3019227 (Tex., Dec.
31, 2004). 





[2]We note that there was no evidence indicating that the
Texas Railroad Commission had cited Primrose for any violations on the Senns= ranch.  Primrose
produced testimony showing that neither Senn nor the Railroad Commission ever
requested that Primrose take any further action on any spill site.  





[3]At $217 per acre, the Senns= acreage would total $4,993,821.