**PRIMROSE OPERATING COMPANY, INC., Appellant,**

v.

**Wilford C. SENN and Wanda Joan Senn, Appellees.**

**No. 11–03–00131–CV.**

Court of Appeals of Texas, Eastland.

March 31, 2005.

Rehearing Overruled May 19, 2005.

See also 55 S.W.3d 222.

Kathleen M. McCulloch, Shafer, Davis, Ashley, O'Leary & Stoker, P.C., Odessa, Rick G. Strange, Cotton, Bledsoe, Tighe & Dawson, P.C., Midland, for appellant.

Timothy F. Lee, Paul Smith, Ware, Snow, Fogel & Jackson, L.L.P., Bill Robins III, Heard, Robins, Cloud, Greenwood & Lubel, L.L.P., Houston, for appellees.

Panel consists of: ARNOT, C.J., and WRIGHT, J., and McCALL, J.

Opinion

W.G. ARNOT, III, Chief Justice.

Wilford C. Senn and Wanda Joan Senn brought suit against various oil companies for the alleged contamination of the Senns' real property, the Covered "S" Ranch. The only defendant remaining in the suit at the time of trial was Primrose Operating Company, Inc. The jury found that Primrose had negligently caused contamination to the surface of the ranch, that the cost to clean up the contamination was $2,110,000, that the diminution in fair market value of the ranch due to Primrose's contamination was $2,110,000, that Primrose acted with malice, and that exemplary damages should be assessed against Primrose. The trial court entered judgment on the jury's verdict, awarding the Senns $2,110,000 in actual damages, over $880,000 for prejudgment interest, and $86,000 as punitive damages. We reverse and render.

 Primrose presents nine issues for appellate review. In the first issue, Primrose contends that the trial court abused its discretion in granting a partial new trial to the Senns. The record shows that this appeal resulted from the second jury trial of this case. After the first trial resulted in a take-nothing judgment in favor of Primrose, the trial court granted in part the Senns' motion for new trial and limited the retrial to the issue of Primrose's liability for surface damages. The trial court

judge stated in his order that he was granting the new trial "in the interests of justice and fairness." In a letter to the parties, the trial judge stated that he was convinced that the jury disregarded their oath even though the jury reached an arguably just result. A trial court's decision to grant a new trial in a civil case, if rendered during the trial court's plenary power, is not reviewable on appeal. *Cummins v. Paisan Construction Company*, 682 S.W.2d 235 (Tex.1984); *Bay, Inc. v. Ramos*, 139 S.W.3d 322, 331 (Tex.App.-San Antonio 2004, pet'n filed).[1] Consequently, we cannot disturb the trial court's decision to grant the partial new trial in this case. The first issue is overruled.

 In its fourth and fifth issues, Primrose challenges the $2,110,000 findings made by the jury in answer to questions regarding the cost of cleanup and the diminution in fair market value. Primrose asserts that these damage findings were based upon unscientific evidence, were excessive, and were not supported by legally or factually sufficient evidence. The Senns had the burden of proof on these questions. Therefore, in order to address Primrose's legal sufficiency/no-evidence challenges, we must consider only the evidence and inferences that tend to support the findings, disregarding any evidence or inferences to the contrary. *Southwest Key Program, Inc. v. Gil–Perez*, 81 S.W.3d 269, 274 (Tex.2002); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965); *see Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997), *cert. den'd*, 523 U.S. 1119, 118 S.Ct. 1799, 140 L.Ed.2d 939 (1998). We may sustain a no-evidence challenge only if one of the following circumstances exists: (1) the record discloses a complete absence of evidence of a vital

1. We note that the Texas Supreme Court recently had an opportunity to reexamine this issue but that it did not do so and, instead, reversed on other grounds. *Volkswagen of America, Inc. v. Ramirez*, 159 S.W.3d 897 (Tex.2004).

fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the only evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. *Merrell Dow Pharmaceuticals, Inc. v. Havner, supra* at 711 (citing Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEX. L. REV. 361, 362–63 (1960)). If there is any evidence of probative force to support the finding, we must overrule the no-evidence point. *Juliette Fowler Homes, Inc. v. Welch Associates, Inc.*, 793 S.W.2d 660, 666 (Tex.1990); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

█ In a case in which a surface owner asserts a claim for damage to his land caused by another's negligence, the type of compensation to be awarded depends on the nature of the injury. *North Ridge Corporation v. Walraven*, 957 S.W.2d 116, 119 (Tex.App.-Eastland 1997, pet'n den'd). Where the injury is temporary and able to be remedied at reasonable expense, damages are measured by the cost of restoring the land to its condition prior to the injury. *North Ridge Corporation v. Walraven, supra.* If the cost to restore the land is excessive or not economically feasible, the injury may be deemed to be permanent. *North Ridge Corporation v. Walraven, supra.* In the case of permanent injuries, the appropriate measure of damages is the diminution in fair market value. *North Ridge Corporation v. Walraven, supra.* The concepts of temporary and permanent injuries are mutually exclusive. *Kraft v. Langford*, 565 S.W.2d 223 (Tex.1978). Consequently, damages for both may not be recovered in the same action. *Kraft v. Langford, supra.*

█ We hold as a matter of law that the cost to restore the land to its condition prior to the leaks at issue in this case is not reasonable and that the repairs are, thus, not "economically feasible." *See North Ridge Corporation v. Walraven, supra; Atlas Chemical Industries, Inc. v. Anderson*, 514 S.W.2d 309 (Tex.Civ.App.-Texarkana 1974), *aff'd*, 524 S.W.2d 681 (Tex.1975). The record shows that Primrose owned an oil and gas lease covering about 3,000 acres of the Senns' 23,013–acre ranch. The Senns purchased the surface only of the ranch in June 1997 for $3,164,000. The ranch has been subject to various leases and to oil and gas production since 1939 when the discovery well was drilled. When the Senns purchased the ranch, hundreds of wells had been drilled on the leased portion of the ranch, and thousands of miles of flow lines crossed the area. According to Wilford Senn (Senn), 500–600 wells were located on his ranch, with approximately 200 of those belonging to Primrose. Primrose began its operations on the ranch in 1992 and vacated the premises in December 1999 when it sold its interest to another company. Sometime after the Senns purchased the ranch, Senn instructed his ranch foreman, Rudy Gonzalez, to photograph any leaks or spills that he observed and to report those leaks and spills to Eddie W. Seay, a regulatory environmental consultant hired by Senn. Senn also hired a chemist, Greg Bybee, to take soil samples of these sites, test for contaminants, and determine the cost of remediation. The samples taken of the 86 Primrose spill sites, which were mostly leaks from flow lines, showed high levels of petroleum hydrocarbons and/or chlorides from the oil and saltwater. According to the Senns' experts, Primrose failed to properly clean up the spill sites.[2] The

2. We note that there was no evidence indicat-

ing that the Texas Railroad Commission had

record showed that the spill sites had not adequately revegetated by the time of trial, but there was no showing that the spill sites resulted in any hazard to human or animal life or even that the sites interfered with Senns' use of the ranch. The Senns' experts testified that the soil in those spill sites, which covered a total of approximately 10 acres but were spread out across the area, needed to be remediated by digging out the contaminated dirt, hauling it to a land farm, and replacing the contaminated dirt with clean soil. Bybee testified that the cost of such remediation would be $2,110,000.

Various witnesses testified regarding the value of the Senns' ranch. When Senn purchased the ranch in June 1997 for $3,164,000, there were some old spills and some oil operation damage. At the time of purchase, the appraised value was a little over $3,100,000. In July 1998 and again in February 2000, Senn swore in his financial statements that the ranch was worth $3,600,000. In May 2000, Senn swore in another financial statement that the ranch was worth $4,200,000. Also in May 2000, Lee Sam Middleton, a real estate broker and appraiser hired by the Senns, appraised the ranch with improvements at $4,275,000. When Middleton inspected and appraised the ranch in 1997 and in 2000, he knew that there had been oil field activity on the ranch, but he appraised the ranch as if it were unaffected by environmental hazards. Middleton testified that, at the time of the appraisals, he was not aware of any environmental hazards that needed to be cleaned up. Middleton further testified that, if the Senns' ranch is contaminated and if the cost to clean up the contamination is $2,110,000, then the fair market value of the ranch would be diminished by $2,110,000—the "cost to cure." Middleton testified that the evaluation should be based upon the cost to cure.

Steven Rogers, a real estate appraiser from Amarillo, appraised the Senns' ranch in March 2001 and October 2002. Rogers testified that, if the ranch were environmentally clean, it would have been valued at $4,500,000 and $4,800,000 on those dates, respectively. Rogers testified that he reviewed the report prepared by Seay and Bybee regarding soil contamination on the ranch and that, based upon that study, Rogers believed that the market value of the ranch would be diminished by both the cost to cure, $2,110,000, and by the negative stigma attached to the contamination, $420,000. According to Rogers, stigma is "the resistance of the market place to the purchase, or under a more likely description, it is a margin that ... any purchaser of the property would like to have above the actual cost to clean up." The stigma value is attached because the cost to cure is generally imprecise and may cost more than expected. Rogers testified that he allotted 20 percent of the cost to cure as stigma. After allowing for both the improvements made by the Senns and the deductions for the stigma and the cost to cure, Rogers valued the ranch at $2,500,000. On cross-examination, Rogers admitted that the authoritative literature that he uses to appraise land provides that not all hazardous substances result in contamination; that, even if contamination does occur, the contamination does not necessarily create an environmental risk; and that, even if contamination results in an environmental impact or environmental risk, there is not necessarily an impact on the marketability of the real estate.

cited Primrose for any violations on the Senns' ranch. Primrose produced testimony showing that neither Senn nor the Railroad Commission ever requested that Primrose take any further action on any spill site.

Middleton and Rogers testified at trial about the recent sale of another nearby ranch. That ranch, despite 25 percent of its 19,000 acres being subject to oil and gas activity, sold for $217–218 per acre. Middleton testified that the Senns' ranch was superior in comparison.[3] The record also showed that Scurry County, where the Senns' ranch is located, is and has been one of the top producing counties for oil and gas in the United States.

The only other witness to testify regarding market value was Clint Bumguardner, a real estate appraiser hired by Primrose. Bumguardner testified that he did not use the cost to cure in appraising the Senns' ranch. According to Bumguardner, the cost to cure was not appropriate in this case because the oil field activity on the Senns' ranch was typical for that area of Texas and did not impact the property and because cost to cure is only utilized when it is economically feasible. Bumguardner did not find that the market value of the Senns' ranch had diminished in value because of Primrose's activities. Bumguardner did not attach any stigma loss to the Senns' ranch because it continued to thrive and be used as a ranch, which was the highest and best use of that property. Also, according to Bumguardner, the market for similar ranches reflected that there was no stigma attached to the oil field activity. On June 15, 2001, Bumguardner appraised the ranch's fair market value considering comparable ranch sales and the oil field activity at $175 per acre for a total of $4,025,000.

■ We hold as a matter of law that the cost to restore the land to its condition prior to the leaks at issue in this case is not reasonable and that the repairs are, thus, not "economically feasible." *See North Ridge Corporation v. Walraven, su-*

pra; *Atlas Chemical Industries, Inc. v. Anderson, supra.* Accordingly, whether injury was temporary or permanent, the proper measure of damages in this case was the diminution in fair market value. *See North Ridge Corporation v. Walraven, supra.* That issue was addressed during the trial and was submitted to the jury. In accord with the testimony of Senns' experts, the jury found that the diminution in fair market value was $2,110,000. However, the only evidence in support of that figure was the testimony that the market value had diminished by $2,110,000 because that was the cost to cure—the amount of money that would have to be expended to remediate Primrose's spill sites and return them to an uncontaminated condition.

First, we are barred from considering that evidence because the cost to cure is an improper measure of damages in this case. The $2,110,000 that it would cost to excavate, haul, and replace the soil on 10 acres of a ranch on which oil and gas producers have been operating for approximately 60 years is not economically feasible. Even the $420,000 stigma amount suggested by Rogers was based upon the cost to cure. Rogers estimated that amount as 20 percent of the cost to cure because the cost to cure is often imprecise.

Second, the testimony of Senns' experts regarding the diminished market value did not take into account the fact that the land was not pristine when the Senns purchased the ranch. The Senns purchased the land "as is" after observing old spills and some damage from oil and gas operations. As shown by uncontroverted testimony, some leaks and spills are inevitable. At the time of the Senns' purchase, the oil field located on their ranch was very mature. The flow lines that leaked while Primrose conducted its activities on the

3. At $217 per acre, the Senns' acreage would total $4,993,821.

ranch had been on the same right-of-ways since the 1940s and 1950s. Furthermore, prior to being banned by the Railroad Commission, open saltwater disposal pits had been located on the Senns' ranch.

While we do not condone Primrose's failure to adequately clean up the sites immediately when the cost would have been much less, we hold that the Senns have failed to produce any evidence that their ranch diminished in value because of Primrose's negligence. The fifth issue is sustained, and the remaining issues need not be addressed. TEX.R.APP.P. 47.1. Because the Senns failed to provide any competent evidence of an essential element of their cause of action, we must reverse the judgment of the trial court and render judgment in favor of Primrose. *See Kerr–McGee Corporation v. Helton,* 133 S.W.3d 245, 258–60 (Tex.2004).

The judgment of the trial court is reversed, and we render judgment that the Senns take nothing from Primrose.