

NUMBER 13-09-00035-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**PAUL PONTON AND JOYCE M. PONTON,**                    **Appellants,**

**v.**

**RICHARD MILLER AND JARVIS MILLER,**                    **Appellees.**

---

**On appeal from the 156th District Court
of Live Oak County, Texas.**

---

# MEMORANDUM OPINION

**Before Justices Rodriguez, Benavides, and Vela
Memorandum Opinion by Justice Benavides**

After a jury trial, the jury found that Joyce M. and Paul Ponton, appellants, trespassed on land owned by Richard and Jarvis Miller, appellees. The jury awarded cost of restoration damages totaling $87,000. On October 22, 2008, the trial court entered judgment on the verdict. The Pontons appealed, asserting that (1) the trial court submitted an improper measure of damages; (2) the evidence is legally and factually insufficient to support the damages award; and (3) the evidence is legally and factually insufficient to

support the jury's finding that Joyce Ponton trespassed on the Millers' property. We affirm.

## I. BACKGROUND[1]

This case calls into question the adage that "fences make good neighbors." The Pontons and the Millers own adjacent property on the shores of Lake Corpus Christi. At one time, a drainage ditch divided the two properties. A fence exists on the Millers' side of the ditch. When the Pontons purchased their lot in December 2004, they believed that this fence marked the boundary line between the two properties. Because the ditch collected water, fallen trees, debris and even dead animals, the Pontons filled in the ditch using dirt provided by a road construction company performing work in nearby Mathis, Texas. Subsequent to filling in the ditch, the Pontons learned that the fence did not mark the boundary between the properties; the Millers actually owned the ditch.

Additionally, in an effort to maintain their shoreline, the Pontons hired a bulldozer contractor to "clean" the shoreline. The bulldozer operator cleared grass, brush and other debris, including some trees, off of the shoreline on the Ponton's property. However, according to the Millers, the bulldozer operator also removed dirt from their portion of the shoreline.

The Millers sued the Pontons alleging that the Pontons' actions amounted to a trespass on the Millers' property. The Pontons filed a counterclaim asserting that they owned the ditch by adverse possession. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.026 (Vernon 2002). The case was tried to a jury, which concluded that the Pontons trespassed on the Millers' land. The trial court submitted a jury charge that included a question asking the jury to calculate damages based on the cost to restore the Millers' property to the

---

[1] Because this is a memorandum opinion and the parties are familiar with the facts, we will only discuss the facts insofar as they relate to the ultimate disposition of this appeal. *See* TEX. R. APP. P. 47.1.

condition it was in prior to the Pontons filling in the ditch and removing dirt from the shoreline. The jury found that the cost to restore the ditch is $71,500 and the cost to restore the shoreline is $15,500. The trial court rendered judgment on the verdict, and this appeal ensued.

## II. PROPER MEASURE OF DAMAGES

In their first issue, the Pontons argue that the trial court erred by submitting a cost of restoration measure of damages to the jury instead of submitting a diminution in fair market value measure of damages. The Pontons assert that because the cost of restoration exceeds the diminution in value of the ditch and the shoreline, the proper measure of damages is the diminution in value of those specific parts of the Millers' property. The Millers contend that cost of restoration is the appropriate measure of damages because the cost to restore is less than the diminution in value of their entire property.

The proper measure of damages is a question of law. *Allied Vista, Inc. v. Holt*, 987 S.W.2d 138, 141 (Tex. App.–Houston [14th Dist.] 1999, pet. denied). We review de novo the trial court's decision of which measure of damages to apply. *C.C. Carlton Indus., Ltd. v. Blanchard*, 311 S.W.3d 654, 662 (Tex. App.–Austin 2010, no pet. h.) (citing *TA Operating Corp. v. Solar Applications Eng'g, Inc.*, 191 S.W.3d 173, 183 (Tex. App.–San Antonio 2005, pet. granted); *Matheus v. Sasser*, 164 S.W.3d 453, 458 (Tex. App.–Fort Worth 2005, no pet.)). A trial court commits reversible error when it instructs the jury on an improper measure of damages. *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 817 (Tex. 1997).

Generally, "[w]hen an injury to land is temporary and can be remediated at reasonable expense, the proper measure of damages is the cost of restoration to its

3

condition immediately preceding the injury." *Mieth v. Ranchquest, Inc.*, 177 S.W.3d 296, 303 (Tex. App.–Houston [1st Dist.] 2005, no pet.) (op. on reh'g) (citing *Kraft v. Langford*, 565 S.W.2d 223, 227 (Tex. 1978)).  "However, the diminution in fair market value is the measure of damages when the cost of restoration exceeds the diminution in fair market value.  *Id.* at 303-04 (citing *North Ridge Corp. v. Walraven*, 957 S.W.2d 116, 119 (Tex. App.–Eastland 1997, pet. denied)); *see Atlas Chem. Indus., Inc. v. Anderson*, 514 S.W.2d 309, 319 (Tex. Civ. App.–Texarkana 1974), *aff'd*, 524 S.W.2d 681 (Tex. 1975) (op. on reh'g).

The Pontons contend that, based on their calculations using Richard Miller's testimony regarding the fair market value of the Millers' property, the cost to restore the ditch and the shoreline exceeds the diminution in value of those specific areas of the Millers' property.  Citing *Anderson*, the Pontons assert that the fair market value of only the damaged portions of the property is to be considered in determining which measure of damages to apply.  *See Anderson*, 514 S.W.2d at 319 (applying diminution in value as the measure of damages and holding that the evidence supported the jury's finding that the diminution in value was $175 per acre and that 60 acres out of 185 total acres was damaged).  The Millers argue that the fair market value of the entire property must be considered in determining whether to apply cost of restoration or diminution in value.

Unlike in *Anderson*, no evidence was admitted regarding the diminution in value of either the entirety of the Millers' property or specifically of the ditch and shoreline.  *See id.* We will not assume, as the Pontons urge, that the diminution in value of the ditch and shoreline is "100%."  Thus, without any record evidence to support the Pontons' argument, we cannot conclude that the diminution in value of the ditch and shoreline was greater than the cost to restore those areas.  Additionally, as the Eastland Court of Appeals noted in

4

*North Ridge Corporation v. Walraven*, when determining whether the cost of repair or restoration exceeds the diminution in value, the diminution in value of the entire property is to be considered. 957 S.W.2d 116, 119-120 (Tex. App.–Eastland 1997, pet. denied) (finding that when the cost of restoration or repair of the damaged portion of the property is more than six times greater than the value of the entire property, diminution in value is the proper measure of damages). The Pontons' first issue is overruled.[2]

## III. SUFFICIENCY OF THE EVIDENCE

In their second issue, the Pontons argue that the evidence is legally and factually insufficient to support the jury's damages awards. Specifically, the Pontons contend that the evidence supporting the jury's award for restoring the ditch is factually insufficient and that the evidence supporting the jury's award for restoring the shoreline is legally and factually insufficient.

### A. Standard of Review

When we perform a legal sufficiency review, we review the evidence in the light most favorable to the verdict, crediting favorable evidence if a reasonable person could and disregarding contrary evidence unless a reasonable person could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We deny a legal sufficiency challenge unless: (1) there is no evidence of a vital fact; (2) the evidence to prove a vital fact is no more than a scintilla; (3) the rules of evidence or law prohibit the consideration of the only evidence offered to prove a vital fact; or (4) the evidence conclusively establishes the opposite of a vital fact. *See id.* at 810. "[M]ore than a scintilla of evidence exists if the evidence 'rises

---

[2] Because we have overruled the Pontons' first issue, we do not address their subissue in which they state that the proper relief, should we sustain their first issue, is a remand on both damages and liability. *See* TEX. R. APP. P. 47.1.

to a level that would enable reasonable and fair-minded people to differ in their conclusions.'" *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004) (quoting *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)).

In conducting a factual sufficiency review, we consider all of the evidence and will only reverse the judgment if it is so against the great weight and credibility of the evidence as to be clearly wrong and manifestly unjust. *Arias v. Brookstone, L.P.*, 265 S.W.3d 459, 468 (Tex. App.–Houston [1st Dist.] 2007, pet. denied) (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986)).

Because the jury is the sole judge of the credibility of the witnesses, it may choose to believe one witness over another. *Id.* (citing *City of Keller*, 168 S.W.3d at 819). We will not impose our opinion to the contrary. *Id.* Resolving conflicts in the evidence is also within the jury's province, and we "must assume that jurors resolved all conflicts in accordance with their verdict if reasonable human beings could do so." *Id.*

## B. The Ditch

Frank Blumberg, a businessman with experience in digging drainage ditches, installing septic systems, and estimating "dirt volumes," testified that the cost to restore the ditch would be $91,000, assuming the ditch is 400 feet long, 30 feet wide, and seven feet deep. At those dimensions, approximately 3,000 to 4,000 cubic yards of dirt would need to be removed. Blumberg stated that Richard Miller provided the dimensions to him and that he surveyed the ditch approximately six years earlier, at which time he personally observed the ditch to have these dimensions. When Blumberg evaluated the ditch after it had been filled in, he did not "put a tape to it," but he "think[s] [that he] stepped it off." He used these observations when he calculated the amount of material and cost of labor to restore the ditch.

6

However, Richard Miller testified that the ditch was 400 feet long, three to four feet deep, and ranged in width from ten-to-twelve feet wide at one end to thirty-to-thirty-five feet at the other end. Using these new dimensions, Blumberg estimated a restoration cost of approximately $30,000 for removing 1,157 cubic yards of dirt. Blumberg further testified that the estimate of $91,000 was based on his calculations in 2008 but that if he had actually calculated the estimate in early 2005, the estimate would have "probably" been $88,000.

Paul Ponton testified that he filled in the ditch to a width of approximately forty-six feet in order to make the ground level between the Pontons' property and the Millers' property. The Millers' property is several feet lower than the Pontons' property.

The Pontons contend that Blumberg's opinions are based on unfounded assumptions because Blumberg used measurements that Richard Miller provided to him, and Richard Miller contradicted those measurements at trial. *See City of Keller*, 168 S.W.3d at 813. The Pontons assert that this Court cannot disregard Richard Miller's contrary testimony. *See id.* However, the jury was presented evidence establishing that the ditch was 400 feet long; three-to-four feet deep or seven feet deep; and that the dirt to be removed covered either a width of ten-to-twelve fee to thirty-to-thirty-five feet, thirty feet, or forty-six feet. Blumberg "stepped . . . off" the ditch when he made his calculations that the ditch was 400 feet long, thirty feet wide, and seven feet deep. It was the jury's duty to resolve this conflicting evidence, and we will not disturb their decision on appeal. *See Arias*, 265 S.W.3d at 468. The jury's award of $71,500 to restore the ditch is not so against the weight of the evidence as to be clearly wrong or manifestly unjust. *See id.*

C.    **The Shoreline**

The Pontons assert that the evidence to support the jury's award of $15,500 to

7

restore the shoreline is legally and factually insufficient. The Pontons argue that there is no evidence that dirt was removed from the shoreline and, alternatively, that if dirt was removed, the evidence is not sufficient to support the conclusion that the restoration cost is $15,500. Specifically, the Pontons challenge the testimony of David Underbrink, the president of Naismith Engineering, the surveying company hired by the Millers. The Pontons contend that Underbrink's opinion is unfounded, arguing that he based his opinion on Richard Miller's statements that dirt had been removed from the shoreline.

Underbrink testified that Richard Miller hired Naismith to determine how much dirt had been removed from the shoreline. Richard Miller told Underbrink that he believed dirt had been removed from an area of about 300 feet to a depth of about three feet. Naismith Engineering performed two surveys in November 2006, one of which was taken after Richard Miller hired the company to determine the amount of missing dirt. The surveys were nearly identical and did not indicate that any dirt had been removed between the time of the two surveys.

Underbrink then evaluated the survey information "to see in the contouring in the survey information . . . [whether] there were any gouges that looked like . . . apparent holes in the general lay of the land." He found some apparent holes, but they were not as "drastic" as Richard Miller's estimate of three feet deep. He conservatively estimated that dirt had been removed to a depth of one foot, for a total amount of dirt removed of 1,000 cubic yards.

To calculate the amount removed, Underbrink used computer modeling, which allowed him to model the contours of the shoreline. Where the survey showed a "dip" while the computer model showed no "dip," Underbrink "tried to approximate what we thought would be the normal surface." Underbrink further testified about his method for

8

determining how much soil had been removed, stating:

> The computer system sets up a grid of points and takes elevations on this grid system for both surfaces, so it has an existing surface. And in this case[,] the upper surface is a higher surface, so it takes those grid points and calculates the volume under both, and [it] just takes subtraction to find the difference.

Underbrink estimated that the cost to replace the 1,000 cubic yards of dirt and to restore the shoreline would be $15,500.

On cross-examination, Underbrink agreed that if dirt was removed only to a depth of one foot, the remaining hole would be "imperceptible with the eye." He also agreed that it was possible that no dirt had actually been removed and that he was not an eyewitness to any such removal. However, Underbrink was "very confident" in his calculation that dirt had been removed up to a depth of one foot. Underbrink based this opinion on two grounds: (1) Richard Miller's statement that dirt had been removed; and (2) Underbrink's own computer modeling of the contours of the shoreline, which indicated that 1,000 cubic yards of dirt had been removed.

The Pontons contend that Underbrink's opinion is undermined by Paul Ponton's testimony that he had more dirt than he needed to fill in the ditch. The Pontons also argue that Rocky Ybanez's, the owner of the bulldozer Paul Ponton hired to clean the shoreline, testimony refutes Underbrink's conclusion that dirt had been removed. Ybanez stated that Paul Ponton hired his company to clear the shoreline of brush and other debris and that Ybanez, Paul Ponton, and Ybanez's bulldozer operator met to discuss the area Paul Ponton wanted cleared. Paul Ponton did not instruct either Ybanez or the bulldozer operator to remove any dirt; however, Ybanez did not supervise the actual work the operator performed and could not state definitively that no dirt had been removed during

9

the clearing process.

During trial, Underbrink viewed a picture which showed a giant pile of debris, including dirt, brush, and trees, that the bulldozer operator removed from the shoreline and pushed onto the Pontons' property. Underbrink noted that the removal of 1,000 cubic yards of dirt from an area of approximately 300 feet and a depth of about one foot is consistent with such clearing activity. Underbrink stated, "I think the calculations and the assumptions I made for producing those calculations more closely follow the little bit of dirt that gets scooped up with cleaning vegetation." Underbrink's opinion was consistent with Ybanez's testimony regarding the work Ybanez's bulldozer operator performed for the Pontons.

The jury's duty was to resolve any conflicts in the evidence and to weigh the credibility of the witnesses. *See Arias*, 265 S.W.3d at 468. The evidence before the jury was such that reasonable people could differ in their conclusions and is thus legally sufficient. *See Ridgway*, 135 S.W.3d at 601. Our resolution of the Pontons' legal sufficiency challenge also resolves their assertion that the trial court erred by denying their motion to disregard and for judgment notwithstanding the verdict. *See B & W Supply, Inc. v. Beckman*, 305 S.W.3d 10, 15 (Tex. App.–Houston [1st Dist.] 2009, pet. denied) ("An appellate court reviews a [judgment notwithstanding the verdict] under a no-evidence standard of review."); *Shell Oil Prods. Co. v. Main Street Ventures, L.L.C.*, 90 S.W.3d 375, 387 (Tex. App.–Dallas 2002, pet. dism'd by agr.) ("A trial court may disregard a jury finding and grant a motion for JNOV only when there is no evidence to support the finding.") (citing *Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 227 (Tex. 1990)). Additionally, the jury's verdict is not "so against the great weight and credibility of the evidence as to be clearly

10

wrong and manifestly unjust." *Arias*, 265 S.W.3d at 468. Therefore, the evidence is also factually sufficient. *Id.* We overrule the Pontons' second issue.

## IV. JOYCE PONTON

In their third appellate issue, the Pontons assert that the evidence is legally and factually insufficient to support the jury's answer to question number one in the charge. Question number one asked the jury, "Did the Pontons trespass on the Miller's [sic] property?" The charge defined "trespass" as "enter[ing] another's land without consent" which "can be made by permitting a thing or person to cross the boundary of a property." Specifically, the Pontons argue that the evidence is legally and factually insufficient to support a conclusion that Joyce Ponton trespassed on the Millers' land. The Millers contend that the Pontons have waived this issue by failing to: (1) object to the charge including both Joyce and Paul; (2) raise this issue in their motion to disregard and for judgment notwithstanding the verdict; and (3) specifically challenge in their motion for new trial the jury's finding that both Pontons committed trespass against the Millers. The Millers further assert that the evidence is legally and factually sufficient to support the jury's finding that Joyce Ponton committed trespass against the Millers.

### A. Preservation

To properly preserve error, the party alleging error must have made a timely, specific objection or motion to the trial court and must have received an adverse ruling on the objection. *See* TEX. R. APP. P. 33.1. In their motion for new trial, the Pontons specifically asserted that the evidence was legally and factually insufficient to support the jury's finding that the "Pontons" committed trespass. By so doing, the Pontons properly preserved their complaint that the evidence is legally and factually sufficient to support the

11

jury's conclusion that Joyce Ponton committed trespass.  *See* TEX. R. CIV. P. 324(b)(2) (requiring a party to include a factual sufficiency challenge in a motion for new trial); *El-Khoury v. Kheir*, 241 S.W.3d 82, 86 (Tex. App.–Houston [1st Dist.] 2007, pet. denied) (stating that a legal sufficiency challenged may be preserved by including the argument in a motion for new trial).  However, by preserving this issue in their motion for new trial, should we sustain their argument, the Pontons will be entitled to, at most, a remand.  *See El-Khoury*, 241 S.W.3d at 90 (citing *Werner v. Colwell*, 909 S.W.2d 866, 870 n.1 (Tex. 1995); *Horrocks v. Tex. Dep't of Transp.*, 852 S.W.2d 498, 499 (Tex. 1993) (per curiam)).

## B.  Legal and Factual Sufficiency

The Pontons allege that the evidence demonstrated that Joyce Ponton was not responsible for any trespass that occurred on the Millers' property.  During direct examination, Joyce Ponton agreed that she did not "have anything to do with the mowing out there on the Miller property or the clearing of the brush."  She further agreed that she did not "have anything to do with calling the [City of Corpus Christi] and getting permission to do that clearing."  Additionally, Joyce did not perform any maintenance on the ditch.  However, during cross-examination, she stated that, during the course of a property dispute with the prior owners of the Pontons' lot, she and Paul Ponton received permission to go on the land at which point, "we started cleaning [the ditch] and taking care of [the ditch] to protect against the trees falling in. . . ."  Additionally, during cross-examination, Paul Ponton agreed that he and Joyce Ponton "hired a bulldozer to do some work out there at the lake. . . ."  Paul Ponton also testified that, once they took over the property, "the first thing we did is try to get the ditch to where it would drain because of the smell. . . .  And we could not remove the water."  Later, Paul Ponton stated, regarding the ditch, "we filled it

12

in."

Ybanez testified that he charged the Pontons $3,425 for the bulldozer work they hired him to perform on the shoreline. The record contains a check for $3,425, signed by Joyce Ponton and made payable to Ybanez's company. Ybanez confirmed that this check was payment for the work done at the shoreline.

The Pontons have a bulkhead on the shoreline. According to Larry Fisher, the survey department director for Naismith Engineering who performed a survey of the Millers' property, the Pontons' bulkhead encroaches slightly onto the Millers' property. Joyce Ponton referred to the bulkhead as "our bulkhead." Paul Ponton confirmed that the bulkhead "sticks over into the Miller property."[3]

As the triers of fact, the jury had the duty to resolve the conflicts in the evidence. *See Arias*, 265 S.W.3d at 468. The jury heard Joyce Ponton's contradictory testimony concerning the Pontons' actions in relation to the ditch. The jury also had evidence before it that the bulkhead owned by the Pontons encroached on the Millers' property. The jury "may resolve inconsistencies in the testimony of any witness." *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986) (citing *Benoit v. Wilson*, 150 Tex. 273, 239 S.W.2d 792 (1951)). "They may choose to believe one witness and disbelieve another." *City of Keller*, 168 S.W.3d at 819. We "cannot impose [our] own opinions to the contrary." *Id.* We conclude that the evidence before the jury was such that reasonable people could differ in their conclusions and is thus legally sufficient. *See Ridgway*, 135 S.W.3d at 601. We

---

[3] Prior to the conclusion of the evidence in the underlying trial, the parties agreed that, by adverse possession, the Pontons acquired title to the surface area encroached upon by the bulkhead. In its judgment, the trial court incorporated the parties' agreement and rendered judgment vesting title in the Pontons to the property formerly owned by the Millers upon which the bulkhead encroached.

13

further conclude that the jury's determination that the Pontons trespassed on the Millers' land was not "so against the great weight and credibility of the evidence as to be clearly wrong and manifestly unjust." *Arias*, 265 S.W.3d at 468. Therefore, the jury's answer to question one is supported by factually sufficient evidence. *Id.* The Pontons' third issue overruled.

## V. Conclusion

Having overruled all of the Pontons' appellate issues, we affirm the judgment of the trial court.

_____
GINA M. BENAVIDES,
Justice

Delivered and filed the
26th day of August, 2010.

14