

In The

# Eleventh Court of Appeals

_____

## No. 11-09-00052-CV

_____

### STEPHEN KEMP AND ELLIOT KEMP, Appellants

### V.

### PAUL JENSEN; JOHN SARINGER; AND WAGSTAFF, ALVIS, STUBBEMAN, SEAMSTER & LONGACRE, L.L.P., Appellees

**On Appeal from the 104th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 24,255-B**

## O P I N I O N

Stephen and Elliot Kemp filed a motion for rehearing, which is denied. We withdraw our opinion and judgment dated September 16, 2010, and substitute our opinion and judgment dated December 2, 2010.

This is a legal malpractice suit. Stephen and Elliot Kemp sued Paul Jensen; John Saringer; and Wagstaff, Alvis, Stubbeman, Seamster & Longacre, L.L.P. (collectively the attorneys), alleging causes of action for negligence and breach of fiduciary duty. The trial court granted the attorneys' traditional summary judgment motions and entered a take-nothing judgment. We affirm.

## I. *Background Facts*

Stephen and Elliot Kemp own real property in Coleman County that is subject to mineral leases. Elliot assigned to Stephen any claims that he had for damages to this property, and Stephen retained Jensen to represent him in a surface damage dispute. On February 11, 2000, Jensen filed suit against several oil companies, including Subsurface Exploration Company, a California company. Subsurface Exploration (Cal) did not file an answer. Jensen withdrew as Stephen's counsel on June 21, 2001, and Saringer and the Wagstaff firm assumed his representation.

Saringer filed a motion for default judgment against Subsurface Exploration (Cal) on May 21, 2003, and obtained an interlocutory default judgment for $246,700. Subsurface Exploration (Cal) contacted Saringer and told him that the wrong entity had been sued. It filed a motion for new trial, and the trial court set aside the default judgment on June 19, 2003. Saringer filed an amended petition on July 18, 2003, against Jimmy Gassiot, individually and d/b/a Subsurface Exploration. Gassiot asserted limitations, and when the case was tried, the trial court instructed the jury not to assess any damages caused by Gassiot prior to July 16, 2001. The jury found that Gassiot was not negligent. The Kemps then filed this malpractice action. The attorneys responded with traditional motions for summary judgment predicated upon the jury's no-negligence finding. The trial court granted their motions, and this appeal followed.

## II. *Issues*

The Kemps challenge the trial court's judgment with two issues. First, they contend that the underlying jury verdict did not foreclose this legal malpractice claim. Second, they argue that there are unresolved questions of material fact.

## III. *Discussion*

### A. *Standard of Review*.

The attorneys filed traditional motions for summary judgment. We review those motions with a well-settled, multifaceted standard of review. Questions of law are reviewed de novo. *St. Paul Ins. Co. v. Tex. Dep't of Transp.*, 999 S.W.2d 881 (Tex. App.—Austin 1999, pet. denied). To determine if a fact question exists, we must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all the evidence presented. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007). We must consider all the evidence in the light most favorable to the nonmovant, indulging all reasonable inferences in

2

favor of the nonmovant, and determine whether the movant proved that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546 (Tex. 1985).

### B. Did the Attorneys Negate Proximate Cause as a Matter of Law?

The Kemps asserted negligence causes of action against each defendant. This requires proof of a legal duty, a breach of that duty, that the breach proximately caused the Kemps' injuries, and damages occurred. *Alexander v. Turtur & Assocs., Inc.*, 146 S.W.3d 113, 117 (Tex. 2004). When a legal malpractice action arises from prior litigation, the plaintiff must prove that, "but for" the attorney's breach of duty, it would have prevailed in the underlying case to establish proximate cause. *Rangel v. Lapin*, 177 S.W.3d 17, 24 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). It is not sufficient to show that the case could have been handled differently. The plaintiff's burden is to produce evidence explaining the legal significance of the attorney's failure and the impact this had on the underlying action. *Cantu v. Horany*, 195 S.W.3d 867, 873 (Tex. App.—Dallas 2006, no pet.). Normally, a plaintiff must offer expert testimony to discharge this burden. *See Ersek v. Davis & Davis, P.C.*, 69 S.W.3d 268, 271 (Tex. App.— Austin 2002, pet. denied).

The attorneys do not dispute that they owed a duty to the Kemps but argue that, regardless of whether they violated that duty, the Kemps cannot show that they suffered any harm because the jury found that Gassiot was not negligent. The Kemps respond that the jury did not find that there was no negligence; it found that there was no negligence within the limitations period.

The jury charge in the underlying case read:

Did the negligence, if any, of those named below proximately cause damage to the Kemp property?

Answer "Yes" or "No"

Answer:

    Jimmy Gassiot and his company, Subsurface Exploration    <u>No</u>

Do not assess damages, if any, caused by Jimmy Gassiot that occurred prior to July 16, 2001.

3

The trial court's instruction to not "assess" pre-July 16, 2001 damages is the source of much of the conflict in this case. As worded, this is a damage instruction. The Kemps, however, argue that it limited the jury's consideration to post-July 16, 2001 activities when determining whether Jimmy Gassiot was negligent.

The parties have cited no rules specific to the interpretation of jury charges, and we have found none ourselves. Therefore, we will apply the traditional rules for interpreting documents. Whether the trial court intended to limit the jury's consideration to post-July 16, 2001 activities we need not consider. *See Alford v. Krum*, 671 S.W.2d 870 (Tex. 1984) (the question is not what the parties meant to say, but the meaning of what they did say). We will give the words used by the trial court their ordinary meaning unless the charge shows that they were meant in a technical or different sense. *Gonzalez v. Mission Am. Ins. Co.*, 795 S.W.2d 734, 736 (Tex. 1990).

The trial court did not instruct the jury to "consider" only post-July 16, 2001 activities when determining negligence but, after the negligence question, instructed them to "assess" no damages for prior activities. Assess is defined in part as: "[T]o determine the rate or amount of (as a tax), to impose (as a tax) according to an established rate, to make an official valuation of (property) for the purposes of taxation." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 74 (11th ed. 2004). This question should have been included on the damages page, but because it limited the jury's quantification of damages and not their negligence determination, a consideration of the charge alone does not allow us to conclude that the jury's no-negligence finding means less than what it says.

The Kemps also challenge the effect of the jury's negligence with parole evidence. The import of the Kemps' position is that we should not consider the jury verdict determinative because it is tainted by the attorneys' negligence, which prevented the jury from receiving and considering all of the evidence, and that, but for this negligence, a different verdict would have been obtained. To establish that evidence was excluded, Stephen Kemp testified by affidavit that the trial court disallowed any evidence of damages occurring prior to July 16, 2001, and that this precluded virtually all of his surface damage evidence. The Kemps also filed an affidavit signed by Saringer. He confirmed the trial court's ruling that limitations barred some claims against Gassiot, and his affidavit can be read to affirm that evidence of pre-July 2001 activities was excluded. Neither witness, however, described any of the excluded evidence or described any of the evidence that was admitted but the jury was prevented from considering because of the trial

4

court's charge. Because there is no transcript from the underlying trial, we are left only to speculate what the jury would have heard or considered if Gassiot rather than Subsurface Exploration (Cal) had been sued originally.

Beyond this, the Kemps offered no evidence explaining the significance of the excluded evidence or why its exclusion altered the outcome. In *Cantu*, 195 S.W.3d 867, the plaintiffs brought a legal malpractice claim complaining of their former attorney's handling of a medical malpractice lawsuit. The trial court granted the attorney's motion for summary judgment. The Dallas court affirmed and noted that plaintiffs offered expert testimony that counsel breached his standard of care by not suing all of the responsible medical and nursing providers and that the legal expert also testified that more likely than not a suit against these parties would have been successful. Plaintiffs did not, however, produce any medical expert testimony corroborating this contention. The Dallas court held that, without this, the plaintiffs failed to raise a fact question on whether they would have prevailed in a medical malpractice lawsuit. *Id.* at 874. The Kemps' summary judgment response suffers from the same failure.

The Kemps offered a legal expert, Robin M. Green. The majority of his affidavit addressed whether the attorneys breached their duty of care, but Green did testify that the attorneys' negligence kept the Kemps from recovering against Gassiot "because the damages had actually occurred for the most part during the 1990s." However, he acknowledged that he had not seen the trial transcript, that he understood the trial court had excluded damage evidence based upon limitations, and that he needed to review the transcript to confirm his understanding. Based upon this, it is impossible to determine from Green's affidavit if he definitively knew what specific evidence was excluded. His lack of knowledge makes any testimony on proximate cause legally insufficient. *See Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996) (affidavits based upon the affiant's belief or understanding of the facts are not proper summary judgment evidence).

Even if we were to consider Green's affidavit, it is clear that he is operating on the assumption that the exclusion of evidence altered the jury's verdict. Logically, one can infer that having damage evidence excluded is prejudicial to a plaintiff's case. But, saying that there was other evidence the jury could have considered is not synonymous with saying that this additional evidence would, more likely than not, have led to a different result. Surface damage suits can be complicated, and mere evidence of damage – even significant damage – is no guarantee of a

verdict. *See, e.g., Primrose Operating Co. v. Senn*, 161 S.W.3d 258 (Tex. App.—Eastland 2005, pet. denied) (reversing jury verdict for $2,110,000 because evidence of remediation costs was not evidence of diminution in fair market value). Consequently, Green's assumption of harm is no evidence of proximate cause.

The Kemps next note that Saringer testified in his affidavit that, if "Kemp [had] been permitted to submit evidence of the conduct of Valera Oil and Subsurface Exploration that occurred prior to July 2001, Mr. Kemp would have had a much better opportunity of obtaining a favorable jury verdict with damages in excess of $150,000.00." Without some basis for this statement and some explanation of why Valera's conduct would have supported a verdict against Gassiot, it is nothing more than a conclusion and, thus, no evidence. *Burrow v. Arce*, 997 S.W.2d 229, 235 (Tex. 1999). Moreover, testimony that the excluded evidence would have provided a better opportunity to prevail is insufficient to create a fact question because it addresses the wrong burden of proof. For example, if the Kemps had a five percent chance of a favorable result without the excluded evidence and a twenty-five percent chance with it, then its admission would have provided them a much better opportunity of obtaining a favorable verdict. However, the Kemps' burden was to offer evidence that more likely than not a favorable verdict would have been achieved. Saringer's affidavit does not satisfy this obligation.

The trial court was presented with a jury finding of no negligence. Regardless of whether this is considered only a finding of no negligence within the limitations period, it was still evidence that the attorneys' negligence was not the proximate cause of the Kemps' damages. To overcome this, the Kemps effectively collaterally challenged it, and they produced evidence that the attorneys breached their duty and evidence that this breach resulted in the exclusion of damage evidence in the underlying trial. But the Kemps did not show what evidence was excluded, did not explain the significance of this excluded evidence or its impact on the trial, and did not produce testimony that but for its exclusion the jury would have returned a different verdict. The trial court had no reason to disregard the jury verdict and, therefore, did not err when it granted the attorneys' motions for summary judgment and dismissed the Kemps' negligence causes of action.

### C. Breach of Fiduciary Duty.

The Kemps also sued Jensen for breach of fiduciary duty, contending that his failure to disclose to them or Saringer that he had sued the wrong entity was a breach of duty. Jensen

6

successfully moved for summary judgment on this claim, contending that the Kemps were attempting to improperly fracture a negligence cause of action. The Kemps argue that the trial court erred because it had no evidence upon which to decide this question and that Jensen had a fiduciary duty to render a full and fair disclosure of material facts, citing *Willis v. Maverick*, 760 S.W.2d 642, 645 (Tex. 1988).

A professional negligence claim arises when an attorney provides improper representation. *Newton v. Meade*, 143 S.W.3d 571, 574 (Tex. App.—Dallas 2004, no pet.). This can happen by giving an erroneous legal opinion or advice; by delaying or failing to handle a matter entrusted to the attorney's care; or by not using ordinary care in preparing, managing, and prosecuting a case. *Murphy v. Gruber*, 241 S.W.3d 689, 693 (Tex. App.—Dallas 2007, pet. denied). Conversely, a breach of fiduciary duty involves the attorney's integrity and fidelity and focuses on whether counsel obtained an improper benefit from representing the client. *Gibson v. Ellis*, 126 S.W.3d 324, 330 (Tex. App.—Dallas 2004, no pet.). An attorney breaches his fiduciary duty when he benefits improperly from the attorney-client relationship by, among other things, subordinating his client's interest to his own, retaining the client's funds, engaging in self-dealing, improperly using client confidences, failing to disclose conflicts of interest, or making misrepresentations to achieve these ends. *Goffney v. Rabson*, 56 S.W.3d 186, 193 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).

Professional negligence claims cannot be converted into fraud, breach of contract, breach of fiduciary duty, or violations of the DTPA. *Murphy*, 241 S.W.3d at 693, 698-99 (allegations that attorneys failed to properly advise, inform, and communicate with clients about their case are claims of professional negligence). Texas courts have consistently held that the failure to disclose significant information about a client's case is professional negligence and not a breach of fiduciary duty. *See, e.g., Murphy v. Mullin, Hoard & Brown, L.L.P.*, 168 S.W.3d 288, 290 (Tex. App.—Dallas 2005, no pet.) (the failure to timely inform clients of defects in documents was claim for professional negligence and not breach of fiduciary duty because there was no claim that attorneys received an improper benefit from the representation); *Aiken v. Hancock*, 115 S.W.3d 26, 29 (Tex. App.—San Antonio 2003, pet. denied) (allegations that lawyer falsely represented he was prepared to try case, failed to reveal he was not prepared to try case, falsely represented expert witness was prepared to testify, and failed to reveal expert witness was not fully prepared to testify did not allege self-dealing, deception, or express misrepresentations in

7

the lawyer's representation to support separate cause of action for breach of fiduciary duty); *Kimleco Petroleum, Inc. v. Morrison & Shelton*, 91 S.W.3d 921, 924 (Tex. App.—Fort Worth 2002, pet. denied) (claim that lawyer misled clients into believing case ready for trial stated claim for legal malpractice, not breach of fiduciary duty). *But cf. Latham v. Castillo*, 972 S.W.2d 66, 69-70 (Tex. 1998) (allegation that attorney affirmatively misrepresented to clients that he had filed and was actively prosecuting their claim was distinct from professional negligence cause of action because of allegation of deceptive conduct).

The Kemps' allegations share some similarities with those raised in *Latham* because of the contention that Jensen engaged in deceptive conduct by withholding information. However, there are no allegations that Jensen received an improper benefit. Instead, the Kemps assert the type of misconduct – not communicating significant information about their case – that courts have consistently found constitutes an allegation of professional negligence. Jensen's obligation to keep his clients informed is an integral component of his duty as a professional. A violation of that duty is a claim for professional negligence. Absent an allegation that Jensen received an improper benefit or other similar contention, it is not a claim for breach of fiduciary duty. The trial court did not err by granting Jensen's motion for summary judgment on the Kemps' breach of fiduciary duty claim. Because of this, the trial court also did not err by granting summary judgment on the Kemps' claim that Saringer was negligent for not advising them that they had a potential DTPA claim against Jensen.

IV. *Conclusion*

Issues One and Two are overruled. The judgment of the trial court is affirmed.


RICK STRANGE
JUSTICE


December 2, 2010

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.

8

**In The**

# Eleventh Court of Appeals

_____

## No. 11-09-00052-CV

_____

**STEPHEN KEMP AND ELLIOT KEMP, Appellants**

**V.**

**PAUL JENSEN; JOHN SARINGER; AND WAGSTAFF, ALVIS, STUBBEMAN, SEAMSTER & LONGACRE, L.L.P., Appellees**

**On Appeal from the 104th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 24,255-B**

### D I S S E N T I N G   O P I N I O N

Because the burden of proof in the context of these traditional motions for summary judgment has been improperly placed upon Stephen and Elliot Kemp, I would grant the motion for rehearing, reverse the summary judgments of the trial court, and remand the case for trial.

The trial court did not grant no-evidence motions for summary judgment; it granted traditional motions for summary judgment. We review a trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). A trial court must grant a

traditional motion for summary judgment if the moving party establishes that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex. 1991). In order for a defendant to be entitled to summary judgment, it must either disprove an element of each cause of action or establish an affirmative defense as a matter of law. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997); *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). Once the movant establishes a right to summary judgment, the nonmovant must come forward with evidence or law that precludes summary judgment. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678-79 (Tex. 1979).

When reviewing a traditional summary judgment, the appellate court considers all the evidence and takes as true evidence favorable to the nonmovant. *Am. Tobacco Co.*, 951 S.W.2d at 425; *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). The appellate court "must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented" and may not ignore "undisputed evidence in the record that cannot be disregarded." *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755, 757 (Tex. 2007). An appellate court must consider all the evidence in the light most favorable to the nonmovant and determine whether the movant proved that there were no genuine issues of material fact and that the movant was entitled to judgment as a matter of law. *Nixon*, 690 S.W.2d 546. In so doing, we must indulge all reasonable inferences in favor of the nonmovant. *Id.*

Unlike those cases that involve a traditional motion for summary judgment, in a no-evidence summary judgment context, the movant does not bear the burden of establishing each element of his claim or defense. *Gen. Mills Rests., Inc. v. Tex. Wings, Inc.*, 12 S.W.3d 827, 833 (Tex. App.—Dallas 2000, no pet.). The nonmovant assumes the burden to present enough evidence to raise a genuine issue of material fact showing that he is entitled to a trial. *Id.* A trial court must grant a motion for no-evidence summary judgment unless the nonmovant produces more than a scintilla of evidence that raises a genuine issue of material fact on the challenged elements. TEX. R. CIV. P. 166a(i); *Gen. Mills*, 12 S.W.3d at 832-33. An appellate court must determine whether the nonmovant produced any evidence of probative force to raise a fact issue on the material questions presented. *Id.* at 833.

The majority discusses the failure of the Kemps to present any evidence of "the significance of the excluded evidence or why its exclusion altered the outcome" of the underlying case. It also discusses the Kemps' failure to "explain the significance of this excluded evidence or its impact on the trial, and . . . produce testimony that but for its exclusion the jury would have returned a different verdict." In its discussion of those failures, the majority cites *Cantu v. Horany*, 195 S.W.3d 867 (Tex. App.—Dallas 2006, no pet.). *Cantu* was a no-evidence summary judgment and is inapposite here.

Because this case is one in which we are reviewing rulings on traditional motions for summary judgment, as opposed to no-evidence motions for summary judgment, the Kemps as nonmovants had no burden to come forward with any evidence unless and until the movants, appellees, either conclusively proved any defenses they might have had or conclusively disproved an element of each of the Kemps' causes of action. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996). It is only after the movant has produced evidence that entitles it to summary judgment that the burden shifts to the nonmovant to present evidence that creates a fact issue. *Id*. Before they may ultimately recover on their negligence claims, the Kemps will have the burden to prove the existence of a legal duty, a breach of that duty, proximate causation, and damages. They may or may not be able to do that, but I do not believe that they are required to do so in a traditional summary judgment context.

To the contrary, it was incumbent upon appellees, as movants, to conclusively disprove at least one of the elements of the Kemps' negligence cause of action. Appellees focused on the proximate cause element of the Kemps' cause of action. At trial, the Kemps would be required to prove that appellees acts or omissions were a substantial factor in bringing about an injury that would not have occurred otherwise. *Hall v. Stephenson*, 919 S.W.2d 454, 456 (Tex. App.—Fort Worth 1996, writ denied). Conversely, in the context of these traditional motions for summary judgment, appellees are required to prove that no acts or omissions of appellees were a substantial factor in bringing about the injury that would not have occurred otherwise. Appellees attempted to make that proof by relying upon the jury verdict. As the Kemps argue, the jury verdict does little, if anything, more than show that the Kemps lost. This proof was not such that appellees met their burden to conclusively disprove an element of the Kemps' negligence cause of action.

11

Furthermore, as earlier stated, under the standard of review in traditional summary judgments, we are to consider all evidence in the light most favorable to the Kemps as nonmovants. We are also to indulge all reasonable inferences in their favor. The jury instruction limiting damages to those that occurred prior to July 16, 2001, should not have been placed within the negligence issue. Almost all of the damages in the case against Subsurface Exploration, the ultimate defendant in the underlying lawsuit, occurred prior to that date. Because it was placed within the negligence issue, the jury verdict could mean that Subsurface Exploration was never negligent. However, I believe that it is also reasonable to infer that the jury could have found that Subsurface was negligent, but the time constraints imposed in the damage instruction prevented the jury from finding that Subsurface was negligent. Because we are to indulge that reasonable inference in favor of the Kemps, I would therefore hold, for this additional reason, that appellees did not conclusively disprove an element of the negligence cause of action. The Kemps were not required to come forward with any evidence in response to the traditional motions for summary judgment.

In their motion for rehearing, the Kemps draw our attention to that portion of their original petition in which they allege that appellee Saringer was negligent for failing to preserve their claims against Jensen under the Deceptive Trade Practices Act and for failing to advise them of their claims against Jensen. This negligence allegation was not addressed in appellees' motions for summary judgment, and the trial court should not have granted summary judgment on that cause of action.

I would hold that the trial court erred when it granted the traditional motions for summary judgment on the negligence cause of action.

The trial court also granted appellees' traditional motions for summary judgment upon the Kemps' breach of fiduciary duty claims. As stated before, unless and until appellees, as movants, conclusively negated an element of this cause of action, the Kemps were under no obligation to come forward with any evidence in response to the motion. I agree that a breach of fiduciary duty claim involves an attorney's integrity and fidelity, and the focus in such claims is upon whether the attorney obtained an improper benefit from representing the client. *Gibson v. Ellis*, 126 S.W.3d 324, 330 (Tex. App.—Dallas 2004, no pet.). I believe that the majority correctly says that an attorney breaches his fiduciary duty when he benefits improperly from the attorney-client relationship by, among other things, subordinating his client's interest to his own,

12

retaining the client's funds, engaging in self-dealing, improperly using client confidences, failing to disclose conflicts of interest, or making representations to achieve those ends. *Goffney v. Rabson*, 56 S.W.3d 186, 193 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).

I also agree that a professional negligence claim, as opposed to a breach of fiduciary duty claim, arises when an attorney provides improper representation by giving erroneous legal opinions or advice; by delaying or failing to handle a matter entrusted to him; or by not using ordinary care in preparing, managing, or prosecuting a case. *Murphy v. Gruber*, 241 S.W.3d 689, 693 (Tex. App.—Dallas 2007, pet. denied). The Kemps alleged those types of claims in the negligence cause of action in their petition.

However, the Kemps did not allege those types of claims in their breach of fiduciary duty cause of action. In their breach of fiduciary duty claims, the Kemps alleged that Jensen failed to disclose the true reason for withdrawing from the case. Also, the Kemps sought recovery of damages against Jensen under the Deceptive Trade Practices Act. Perhaps the Kemps could have been more specific in their claims against Jensen in this portion of their petition. However, unless the petition affirmatively demonstrates that no cause of action exists or that recovery is barred, the trial court must give the plaintiff an opportunity to amend before it grants a motion to dismiss or a motion for summary judgment. *Sixth RMA Partners, L.P. v. Sibley*, 111 S.W.3d 46, 54-55 (Tex. 2003); *Peek v. Equip. Serv. Co. of San Antonio*, 779 S.W.2d 802, 805 (Tex. 1989).

In the Kemps' negligence cause of action, they allege improper representation for failing to sue the right entity and the resultant effects of that. In the breach of fiduciary duty claim, the Kemps complain of Jensen's failure to disclose that information. The difference in the two claims is the difference between negligent conduct and deceptive conduct. "To recast this claim as one for legal malpractice is to ignore this distinction." *Latham v. Castillo*, 972 S.W.2d 66, 69 (Tex. 1998). Therefore, there is no fracturing of a negligence claim. I would grant the motion for rehearing on the breach of fiduciary duty claim against Jensen and remand to the trial court for it to consider whether the Kemps should be required to amend this portion of their petition and, if so, to allow them an opportunity to amend.

For all of the foregoing reasons, I respectfully dissent.


JIM R. WRIGHT

CHIEF JUSTICE

December 2, 2010

Panel consists of:  Wright, C.J.,
McCall, J., and Strange, J.