

# NUMBER 13-23-00562-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

MARIA DEL ROSARIO CEPEDA,                                          Appellant,

v.

SCOTT P. OGLE,                                                    Appellee.

## ON APPEAL FROM THE 166TH DISTRICT COURT
## OF BEXAR COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Justices Silva, Peña, and Cron**
**Memorandum Opinion by Justice Silva**

The trial court granted appellee Scott P. Ogle's combined traditional motion for summary judgment and severance based on a statute of limitations defense against

appellant Maria Del Rosario Cepeda.[1, 2] By three issues, Cepeda complains that the trial court committed reversible error by: (1) dismissing her breach of contract and breach of fiduciary duty claims because they were not improperly fractured from a legal malpractice claim; (2) granting summary judgment on all of her claims because Ogle failed to negate the discovery rule; and (3) applying the incorrect statute of limitations to her breach of contract and breach of fiduciary duty claims. We affirm in part, and reverse and remand in part.

## I.  BACKGROUND

On June 16, 2015, Cepeda was injured in an automobile accident involving a United States Postal Service (USPS) vehicle. On June 22, 2015, Cepeda retained the legal services of Wayne Wright LLP Injury Lawyers (Wright) in San Antonio, Texas. Upon retaining Wright's firm, Cepeda and attorney Harold T. McCall Jr. signed a contingent fee contract, which provided the following:

> IMPORTANT FEATURES: (a) FREE CASE EVALUATION; (b) NO RETAINER FEE; (c) NO UP FRONT CASE EXPENSES; (d) CLIENT MUST APPROVE ANY SETTLEMENT; (e) WRITTEN SETTLEMENT SUMMARY; (f) NO FEE UNLESS WE RECOVER FOR YOU.

In August of 2017, attorney Albert Cabrera, on behalf of Wright, referred Cepeda

---

[1] This case is before the Court on transfer from the Fourth Court of Appeals pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. §§ 22.220(a) (delineating the jurisdiction of appellate courts), 73.001 (granting the supreme court the authority to transfer cases from one court of appeals to another at any time that there is "good cause" for the transfer). We are bound by the precedent of the transferring court to the extent that it differs from our own. *See* TEX. R. APP. P. 41.3.

[2] On December 21, 2023, Ogle's appellate counsel filed a "Suggestion of Death" notifying this Court that Ogle passed away. This appeal is proceeding pursuant to Rule 7.1 of the Texas Rules of Appellate Procedure. *See* TEX. R. APP. P. 7.1 ("If a party to a civil case dies after the trial court renders judgment but before the case has been finally disposed of on appeal, the appeal may be perfected, and the appellate court will proceed to adjudicate the appeal as if all parties were alive. The appellate court's judgment will have the same force and effect as if rendered when all parties were living. The decedent party's name may be used on all papers.").

to Ogle in anticipation of litigation. On September 18, 2017, Ogle sent USPS a letter of representation on behalf of Cepeda. On October 31, 2017, Ogle filed a claim for injury in the amount of $100,000 and property damage in the amount of $4,348.02 with USPS.

On January 17, 2018, Ogle filed a personal injury lawsuit asserting negligence against USPS in federal court seeking damages in the amount of $504,348.02. On June 21, 2018, the federal court issued an order to show cause why Cepeda's personal injury lawsuit should not be dismissed for failing to request service on USPS. On November 27, 2018, Ogle received notification from the federal court that the personal injury lawsuit was dismissed.

On May 14, 2019, USPS issued a settlement check to Cepeda in the amount of $30,000. A copy of the settlement check from USPS indicates a paid date of November 12, 2019.

Cepeda subsequently retained the services of Matthew J. King who emailed Ogle a letter of representation on April 6, 2020. The letter states in part:

[King] has been retained to represent your former client [Cepeda] regarding the representation provided in a personal injury case. Please direct all communications on this matter to this office.

[Cepeda] signed a Contingent Fee Contract with [Wright] on June 22, 2015[,] for representation in an accident that occurred on June 16, 2015. She also signed a [c]onsent to [a]ssociation of [c]o-[c]ounsel allowing for you to represent her in that matter. . . .

On April 27, 2021, Cepeda filed suit against Wright, McCall, Cabrera, and Ogle for legal malpractice, breach of fiduciary duty, and breach of contract.[3] Cepeda alleged that Ogle breached the standard of care between the attorney-client relationship by failing to

---

[3] Wright, McCall, and Cabrera are not parties to this appeal.

3

properly litigate her personal injury lawsuit, failing to respond to the federal court's show cause order, failing to inform her that the personal injury lawsuit was dismissed, and approving a settlement offer without her consent. Almost two years later, on April 5, 2023, Cepeda requested service on Ogle and he was served with the citation and petition on April 14, 2023.

On May 5, 2023, Ogle filed his original answer and a combined motion for summary judgment and severance. Ogle argued that he was entitled to summary judgment because Cepeda's claims were barred by the statute of limitations. Specifically, he argued that Cepeda was trying to improperly fracture claims "in an attempt to extend or defeat limitations" and her legal malpractice claims accrued no later than April 6, 2020, when Cepeda's new counsel sent Ogle a letter of representation. Ogle concluded that Cepeda's legal malpractice claims were barred by the two-year statute of limitations because he was not served until April 14, 2023. In support of his motions, he attached King's letter of representation and his own affidavit. Olge's affidavit stated that:

> Previously, as a result of a referral from attorney [Cabrera] with the law firm [Wright], I represented [Cepeda] . . . in a claim and suit against [USPS]. Initially, I was in communication with a representative of the USPS and those discussions not having been fruitful, I filed suit on [Cepeda]'s behalf on January 17, 2018. Shortly after the suit was filed[,] additional negotiations took place and the USPS made an offer of $30,000.00 based on [Cepeda]'s $9,400.00 in medical. I verbally communicated this to [Cepeda], discussed it with her, and she authorized me to accept the offer, which I did. Nothing further was done in the suit itself and later in that same year we received notifications from the [federal court] about dismissal. We did not respond to those since it was a moot point with the case having been settled and ultimately, on November 27, 2018, we received notification from the [federal court] that it had dismissed the case.
>
> For one reason or another there was a delay in receiving the settlement check from the USPS, but it was ultimately received by my office on or about May 21, 2019. Several attempts to reach/communicate with [Cepeda]

4

following receipt of the check were unsuccessful, but I did finally speak with her in June or July at which time she said she had changed her mind about settlement and informed me, for the first time, that she had recently had shoulder surgery but declined to provide additional details about it such as the identity of her doctor, the date of the procedure, who her new health insurance was with, etc.

On August 1 and 2, 2019 emails and letters were sent to [Cepeda] regarding the settlement. On August 9, 2019, [Cepeda] went to see [Cabrera], the referring lawyer, and after discussions between those two that I was not privy to, I was informed that [Cepeda] was satisfied with the settlement, and that she would contact me to finalize the distribution. We never heard from her and numerous attempts to reach her proved unsuccessful.

On April 6, 2020, I received communications from [King] informing me that they were representing [Cepeda] in connection with a potential claim against me. A true and correct copy of that correspondence is attached hereto and marked as "Exhibit 1." I heard nothing further until I was served with the citation in this suit on April 14, 2023, along with the petition that was filed with the [trial court] on April 27, 2021.

On May 30, 2023, Cepeda responded to Ogle's combined motion for summary judgment and severance and attached a copy of the May 14, 2019 settlement check issued by USPS. The check was endorsed by Ogle on behalf of Cepeda. Cepeda also attached her own affidavit wherein she stated that:

[Ogle] filed a lawsuit for me seeking damages for my accident. [Ogle] settled that lawsuit without my knowledge or consent. I was not contacted, by mail or otherwise, by [Ogle], his office, or anyone from [Wright]'s office about that settlement before my case was settled. I have also learned that the lawsuit [Ogle] filed for me about my accident was dismissed because of [Ogle]'s actions and inaction in that case. I was never told by [Ogle], his office, or anyone from [Wright]'s office that the lawsuit was going to be dismissed or had been dismissed. I did not learn when and why the lawsuit [Ogle] had filed for me was dismissed until my new attorney, [King], learned the details after he investigated the case.

I could easily have been contacted about these matters because my address and phone number ha[ve] not changed since before my accident, and I had supplied that information when I originally signed the contract for legal representation. I would not have agreed to settle my personal injury case for the amount [Ogle] settled my case for. The cost of my treatment

5

and surgery was more than the amount [Ogle] accepted as settlement of my claims.

In mid-April 2021, I first learned from my current attorney, [King], that [Ogle] had received and signed my name to a check for $30,000.00 in settlement of my personal injury case. I understand that when [Ogle] signed my name and deposited that check he released all of my claims for injury from my accident. [King] had first received a copy of the front and back of the check from the [USPS] in April 2021. A copy of that document is attached to this affidavit as Exhibit "A".

I believe this is about the same time I learned the reasons that the lawsuit [Ogle] had filed about my accident was dismissed. My current lawsuit against [Ogle] was filed April 27, 2021, shortly after I learned that Ogle had signed my name to the settlement check and had failed to respond to a Show Cause Order.

Cepeda also filed her first amended petition asserting additional claims of fraud and invoking the discovery rule on May 30, 2023.

On June 6, 2023, Cepeda requested to depose Ogle. The trial court granted the request and ordered the deposition to be completed within forty-five days. On August 9, 2023, Ogle testified in the deposition that there were discussions with Cepeda about settling her case against USPS but that he was unsuccessful in conferring with her after she agreed to settle. He testified that he thought Cepeda "contractually agreed to have [him] sign the check." Ogle further testified that he was unable to inform Cepeda of her case being dismissed due to lack of communication.

On October 10, 2023, Cepeda filed a second response to Ogle's combined motion for summary judgment and severance attaching again her own affidavit, a copy of the settlement check, and excerpts from Ogle's deposition.

On October 31, 2023, the trial court granted Ogle's motion for summary judgment "in all things," dismissed Cepeda's claims against Ogle, and severed those claims from

6

Ogle's remaining claims against Wright. This appeal ensued.

## II. STANDARD OF REVIEW

We review a trial court's grant of summary judgment de novo. *Eagle Oil & Gas Co. v. TRO-X, L.P.*, 619 S.W.3d 699, 705 (Tex. 2021). A motion for summary judgment requires the moving party to show that no genuine issue of material fact exists and that the party is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018). If a movant satisfies his burden, the burden shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. *Lujan*, 555 S.W.3d at 84. On appellate review, we take evidence favorable to the nonmovant as true, indulge every reasonable inference, and resolve every doubt in the nonmovant's favor. *Ortiz v. State Farm Lloyds*, 589 S.W.3d 127, 131 (Tex. 2019). "When reviewing a summary judgment, we view the evidence in the light most favorable to the non[]movant and resolve any doubts against the motion." *Sotelo v. Stewart*, 281 S.W.3d 76, 80 (Tex. App.—El Paso 2008, pet. denied). Where, as here, the trial court's order granting summary judgment does not specify the grounds relied upon, we affirm if any of the summary judgment grounds presented to the trial court are meritorious. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).

## III. APPLICABLE LAW

### A. Legal-Malpractice and Breach of Fiduciary Duty

"A fiduciary relationship exists between an attorney and his client as a matter of law." *Franks v. Roades*, 310 S.W.3d 615, 628 (Tex. App.—Corpus Christi–Edinburg, 2010, no pet.). "Once the attorney-client relationship is established, numerous duties are owed the client by the lawyer, which, among others, are to use utmost good faith in

7

dealings with the client, to maintain the confidences of the client, and to use reasonable care in rendering professional services to the client." *Sutton v. Estate of McCormick*, 47 S.W.3d 179, 181 (Tex. App.—Corpus Christi–Edinburg 2001, no pet.) (quoting *Yaklin v. Glusing, Sharpe & Krueger*, 875 S.W.2d 380, 383 (Tex. App.—Corpus Christi–Edinburg 1994, no writ.)). "A lawyer in Texas is held to the standard of care that would be exercised by a reasonably prudent attorney." *Rodgers v. Weatherspoon*, 141 S.W.3d 342, 345 (Tex. App.—Dallas 2004, no pet.) (citing *Cosgrove v. Grimes*, 774 S.W.2d 662, 664 (Tex. 1989) (op. on reh'g)). A legal-malpractice claim "arise[s] from an attorney's alleged failure to exercise ordinary care." *Kimleco Petroleum, Inc. v. Morrison & Shelton*, 91 S.W.3d 921, 923 (Tex. App.—Fort Worth 2002, pet. denied). Our sister court notes:

> [A]n attorney can commit legal malpractice by giving an erroneous legal opinion or erroneous advice, by failing to give any advice or opinion when legally obliged to do so, by disobeying a client's lawful instruction, by taking an action when not instructed by the client to do so, by delaying or failing to handle a matter entrusted to the attorney's care by the client, or by not using an attorney's ordinary care in preparing, managing, and presenting litigation that affects the client's interests.

*Id.* at 923–24.

In general, claims typically sound in negligence alone when a client sues their former attorney for professional misconduct. *See Forshee v. Moulton*, 694 S.W.3d 803, 808 (Tex. App.—Houston [14th Dist.] 2024, no pet.); *see also Barcelo v. Elliott*, 923 S.W.2d 575, 579 (Tex. 1996) ("[A] legal malpractice action sounds in tort and is governed by negligence principles."). In a legal malpractice action, the issue is whether the attorney "exercise[d] the degree of care, skill, or diligence that professionals of ordinary skill and knowledge would exercise." *Pitts v. Rivas*, 709 S.W.3d 517, 524 (Tex. 2025).

8

To succeed on a claim for legal malpractice, the plaintiff must establish that: "(1) the lawyer owed a duty of care to the client; (2) the lawyer breached that duty; and (3) the lawyer's breach proximately caused damage to the client." *Rogers v. Zanetti*, 518 S.W.3d 394, 400 (Tex. 2017). "When a legal-malpractice case arises from prior litigation, the plaintiff must prove that the client would have obtained a more favorable result in the underlying litigation had the attorney conformed to the proper standard of care." *Id.* at 401. This legal methodology, commonly known as the "case-within-a-case" or "suit-within-a-suit" analysis, does not apply if the merits of the underlying litigation have no bearing on the injuries claimed. *Id.*

An attorney may also be liable for a breach of fiduciary duty "if there are allegations of self-dealing, deception, or misrepresentations that go beyond the mere negligence allegations in a malpractice action." *Isaacs v. Schleier*, 356 S.W.3d 548, 559 (Tex. App.—Texarkana 2011, pet. denied). "The focus of breach of fiduciary duty is whether an attorney obtained an improper benefit from representing a client, while the focus of a legal malpractice claim is whether an attorney adequately represented a client." *Kimleco*, 91 S.W.3d at 923. The cornerstones of an attorney's fiduciary duty involve the integrity and fidelity of an attorney. *Roades*, 310 S.W.3d at 623. Texas courts have consistently held that "[a]n attorney breaches his fiduciary duty when he benefits improperly from the attorney-client relationship by, among other things, subordinating his client's interest to his own, retaining the client's funds, engaging in self-dealing, improperly using client confidences, failing to disclose conflicts of interest, or making misrepresentations to achieve these ends." *Kemp v. Jensen*, 329 S.W.3d 866, 872 (Tex. App.—Eastland 2010, pet. denied); *Border Demo. & Env., Inc., v. Pineda*, 535 S.W.3d 140, 160 (Tex. App.—El

9

Paso 2017, no pet.); *Fleming v. Curry*, 412 S.W.3d 723, 732 (Tex. App.—Houston [14th Dist.] 2013, pet. denied); *Murphy v. Gruber*, 241 S.W.3d 689, 698 (Tex. App.—Dallas 2007, pet. denied).

## B.    Anti-Fracturing Rule

Under the anti-fracturing rule, plaintiffs in professional negligence cases may not convert negligence claims "into other claims such as fraud, breach of contract, or breach of fiduciary duty in order to gain a litigation advantage." *Pitts*, 709 S.W.3d at 523. Regarding this rule, the Texas Supreme Court notes:

> The logic underlying the anti-fracturing rule is straightforward. It may often be possible to artfully recast a professional negligence allegation as something more—such as fraud or breach of fiduciary duty—to avoid a litigation hurdle such as the statute of limitations. Courts, however, must look not merely to the labels chosen by the plaintiff but instead to the gravamen of the facts alleged to determine how to treat the claim.

*Id*. at 523–24. "[I]f the crux or gravamen of the plaintiff's claim is a complaint about the quality of professional services provided by the defendant, then the claim will be treated as one for professional negligence even if the petition also attempts to repackage the allegations under the banner of additional claims." *Id*. at 524.

The Texas Supreme Court further notes that there is a "difference between negligent conduct and deceptive conduct." *Latham v. Castillo*, 972 S.W.2d 66, 69 (Tex. 1998). "[A] claim that an attorney failed to provide legal services as agreed upon by the parties is a claim for negligence sounding in tort law." *Pineda*, 535 S.W.3d at 161. To avoid application of the anti-fracturing rule, "the plaintiff must do more than merely reassert the same claim for legal malpractice under an alternative label." *Duerr v. Brown*, 262 S.W.3d 63, 70 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Instead, "[t]he plaintiff

10

must present a claim that goes beyond what traditionally has been characterized as legal malpractice." *Id.* To determine whether a plaintiff is asserting a claim regarding the quality of legal representation or something else, we look to the petition. *Murphy*, 241 S.W.3d at 698.

## C.    Statute of Limitations

A person must bring a suit for personal injury "not later than two years after the day the cause of action accrues." TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a). The Texas Supreme Court notes that "a timely filed suit will not interrupt the running of limitations unless the plaintiff exercises due diligence in the issuance and service of citation." *Tex. State Univ. v. Tanner*, 689 S.W.3d 292, 300 (Tex. 2024). "[W]hile service follows filing, both are prerequisites to 'bringing' the suit. The suit is not 'brought,' and the statute of limitations is not satisfied, until the plaintiff achieves both steps." *Id*. The Texas Supreme Court "recognize[s] that 'diligence in procuring service' on the defendant 'after the limitations period expired' can provide a basis for avoiding a limitations defense." *Draughon v. Johnson*, 631 S.W.3d 81, 93 (Tex. 2021) (quoting *Ashley v. Hawkins*, 293 S.W.3d 175, 179 (Tex. 2009)). "If a party files its petition within the limitations period, service outside the limitations period may still be valid if the plaintiff exercises diligence in procuring service on the defendant." *Ashley*, 293 S.W.3d at 179 (citing *Gant v. DeLeon*, 786 S.W.2d 259, 260 (Tex. 1990)). "When a defendant has affirmatively pleaded the defense of limitations, and shown that service was not timely, the burden shifts to the plaintiff to prove diligence." *Id.* (citing *Proulx v. Wells*, 235 S.W.3d 213, 216 (Tex. 2007)).

A legal malpractice claim is a tort subject to the two-year statute of limitations period. *Erikson v. Renda*, 590 S.W.3d 557, 563 (Tex. 2019). In contrast, a claim for a

11

breach of a fiduciary duty or a breach of contract is governed by a four-year statute of limitations period. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 16.004(a)(5) (breach of a fiduciary duty), 16.051 (residual limitations period).

"The discovery rule is an exception to the general accrual rule that applies when the injury is by its nature inherently undiscoverable." *Agar Corp., Inc., v. Electro Circuits Int., LLC*, 580 S.W.3d 136, 146 (Tex. 2019). "[B]ecause the discovery rule applies to legal-malpractice claims, accrual is deferred until the client discovers, or should discover, the wrongful act and injury." *Erikson*, 590 S.W.3d at 563. The discovery rule applies in circumstances "when the nature of the injury is inherently undiscoverable and the evidence of injury is objectively verifiable." *Archer v. Tregellas*, 566 S.W.3d 281, 290 (Tex. 2018). These elements attempt to strike a balance "between the risk of cutting off meritorious claims and the dangers of fraudulent claims." *S.V. v. R.V.*, 933 S.W.2d 1, 22 (Tex. 1996). The discovery rule has been adopted for legal-malpractice claims "because an attorney's client is not expected to have sufficient legal acumen to perceive injury at the time an omission is made by her attorney." *Messner v. Boon*, 466 S.W.3d 191, 207 (Tex. App.—Texarkana 2015, pet. granted, judgm't vacated w.r.m.).

In a legal-malpractice case, "limitations does not begin to run until the client discovers or should have discovered through the exercise of reasonable care and diligence the facts establishing the elements of a cause of action." *Apex Towing Co. v. Tolin*, 41 S.W.3d 118, 120–21 (Tex. 2001). A plaintiff has a "duty to exercise reasonable diligence to discover facts of negligence or omission." *Sotelo*, 281 S.W.3d at 82. "The specific date by which a plaintiff knew or should have known of an injury is generally a question of fact for the jury." *Rosenberger v. LeMaster*, 678 S.W.3d 549, 563 (Tex. App.—

12

Houston [14th Dist.] 2023, no pet.). "[I]f reasonable minds could not differ about the conclusion to be drawn from the facts, the commencement of the limitations period may be determined as a matter of law." *Mustafa v. Americo Energy Res., LLC*, 650 S.W.3d 760, 765 (Tex. App.—Houston [14th Dist.] 2022, pet. denied).

## D. Limitations Defense

A defendant moving for summary judgment on the affirmative defense of limitations bears the burden of conclusively establishing the elements of that defense, as well as "when the cause of action accrued." *Erikson*, 590 S.W.3d at 563. A defendant will be granted summary judgment on a limitations defense if he conclusively proves: "(1) when the cause of action accrued, and (2) that the plaintiff brought its suit later than the applicable number of years thereafter." *Draughon*, 631 S.W.3d at 89.

In cases where a plaintiff affirmatively pleads the discovery rule, the defendant moving for summary judgment on limitations bears the additional burden of negating the discovery rule. *Schlumberger Tech. Corp. v. Pasko*, 544 S.W.3d 830, 834 (Tex. 2018). Defendants may negate the discovery rule by either conclusively establishing that "(1) the discovery rule does not apply, or (2) if the rule applies, the summary judgment evidence negates it." *Id.*

## IV. ANALYSIS

## A. Improperly Fractured Claims

By her first issue, Cepeda argues that the trial court erred by dismissing her breach of contract and breach of fiduciary duty claims on the affirmative defense of limitations by "implicitly accepting [Ogle]'s argument that [she] improperly fractured her legal malpractice claim." We look at the language contained in Cepeda's amended petition to

13

determine whether she is complaining about the quality of Ogle's legal representation or something else. *See Murphy*, 241 S.W.3d at 698.

### 1. Breach of Contract

Cepeda contends that Ogle breached their contract because she did not agree to settle her case in the amount of $30,000.00 "despite [Ogle's] explicit obligation as provided in the Contingent Fee Contract not to settle her case without her approval." She also asserts the same proposition under the umbrella of legal malpractice. Under the attorney malpractice sub-heading in her amended petition, Cepeda asserts that Ogle "breached the standard of care that arose from the attorney-client relationship by . . . [a]greeing to a settlement of [Cepeda]'s claims without [Cepeda]'s agreement, consent, or knowledge." Under both sub-headings, she complains that Ogle settled her personal injury claim without her authorization. Thus, Cepeda's legal malpractice and breach of contract claims are virtually identical. Cepeda was required to do more than "repackage the allegations under the banner of [an] additional claim[ ]," and failed to do so. *Pitts*, 709 S.W.3d at 524; s*ee also Pineda*, 535 S.W.3d at 161 ("[W]hen a plaintiff's breach of contract claim is based solely on restated allegations that an attorney failed to provide adequate (or any) legal services as agreed upon by the parties, the trial court may properly grant summary judgment on that claim based on improper fracturing."). Accordingly, we conclude that the trial court did not err in impliedly finding that Cepeda's breach of contract claim was improperly fractured from her legal malpractice claim. *See Knott*, 128 S.W.3d at 216.

### 2. Breach of Fiduciary Duty

Cepeda's amended petition also alleges that Ogle breached his fiduciary duty

because he placed his interest above hers in concealing his failure to respond to the show cause order which resulted in dismissal of her case. Under the legal-malpractice sub-heading, Cepeda asserts that Ogle "breached the standard of care that arose from the attorney-client relationship by . . . [f]ailing to respond to a [s]how [c]ause [o]rder issued by the [c]ourt in [Cepeda]'s [f]ederal personal injury lawsuit." Under the same sub-heading, she also asserts that his "[f]ailure to respond to the [f]ederal [c]ourt's [o]rder to [s]how [c]ause involved an extreme degree of risk [to her] personal injury suit in [f]ederal [c]ourt being dismissed." The factual basis in support of her breach of fiduciary duty claim is virtually identical to her legal malpractice claim—namely, Ogle's failure to respond to the show cause order that resulted in dismissal of her case. In other words, Cepeda simply tacks onto her breach of fiduciary duty claim the additional allegation that Ogle concealed this failure and put his own interest above her own.

It is undisputed that Ogle had a fiduciary duty to Cepeda. *See Roades*, 310 S.W.3d at 628. However, the gravamen of Cepeda's breach of fiduciary duty claim must focus on whether Ogle received an improper benefit from such claims. *See Kimleco*, 91 S.W.3d at 923 ("The focus of breach of fiduciary duty is whether an attorney obtained an improper benefit from representing a client."). Although Cepeda alleged in her petition that Ogle placed "his interest in concealing his failure to respond to the [o]rder to [s]how [c]ause and resulting dismissal" above her interests, she pleaded no facts alleging how Ogle improperly benefitted by his actions or inactions. *Id.* Instead, to support both claims, Cepeda complains about the quality of Ogle's representation, specifically his failure to properly advise, inform, and communicate with Cepeda about her case. Accordingly, her breach of fiduciary claim is nothing more than a repackaged claim of legal malpractice.

15

*See Pineda*, 535 S.W.3d at 161 (concluding that when a plaintiff "alleges only that an attorney failed to take certain actions to protect its interests in a case, or otherwise failed to provide proper representation—but makes no allegation that the attorney engaged in any self-dealing or that the attorney received an improper benefit from his or her actions— the action sounds solely in professional negligence, rather than in breach of fiduciary duty"); *Kemp*, 329 S.W.3d at 872 (holding that an attorney's "obligation to keep his clients informed is an integral component of his duty as a professional" and that "[a]bsent an allegation that [an attorney] received an improper benefit or other similar contention, it is not a claim for breach of fiduciary duty"); *see also Archer v. Med. Protective Co.*, 197 S.W.3d 422, 427 (Tex. App.—Amarillo 2006, pet. denied) (claims that an attorney neglected matters, mis-evaluated a case, and failed to communicate with his client are "viewed as claims involving legal malpractice"). We conclude that the trial court did not err in impliedly finding that Cepeda's breach of fiduciary duty claim was improperly fractured from her legal malpractice claim. *See Knott*, 128 S.W.3d at 216. Cepeda's first issue is overruled.[4]

## B.    Discovery Rule

By her second issue, Cepeda argues that the trial court erred in granting the motion for summary judgment with respect to all of her causes of action when Ogle "failed to negate the discovery rule as a matter of law."[5]

---

[4] Because we have overruled Cepeda's first issue, we need not address her third issue challenging the trial court's implied finding regarding the applicable statute of limitations of her breach of contract and breach of fiduciary duty claims. *See* TEX. R. APP. P. 47.1. ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").

[5] Because we have concluded that the anti-fracturing rule applied to Cepeda's breach of contract

16

In this case, the record shows that Ogle received a settlement check around May 14, 2019, and indicates a paid date of November 12, 2019. The record also reflects that her federal court lawsuit was dismissed on November 27, 2018. The basis of Cepeda's alleged legal injury, if any, would have occurred around those dates. Ogle was served with Cepeda's original petition on April 14, 2023, which is well over the two-year statute of limitations period. *See Erikson*, 590 S.W.3d at 563. Because Cepeda raised the discovery rule in her amended petition, Ogle had the additional burden of negating the discovery rule, which would defer the accrual of Cepeda's legal injury until she discovered or should have discovered the wrongful act and injury that gave rise to her claims. *Id.*

The summary judgment record includes a letter from King that was emailed to Ogle on April 6, 2020, which noted that he had been retained to represent Cepeda. Although Ogle notes that Cepeda should have discovered her "alleged cause of action" much earlier, he asserts that this letter provides evidence establishing that she knew or should have known of her legal injury at the latest in April of 2020, thus commencing the statute of limitations. *See id.*

In contrast, Cepeda stated in her affidavit that "[i]n mid-April 2021, I first learned from my current attorney, [King], that [Ogle] had received and signed my name to a check for $30,000.00 in settlement of my personal injury case." She further stated, "I believe this is about the same time I learned the reasons that the lawsuit [Ogle] had filed about my accident was dismissed." Viewed in the light most favorable to Cepeda, we find that her affidavit contains evidence that she (1) did not discover that the settlement check was

and breach of fiduciary duty claims—barring her from asserting those claims—we need not address Cepeda's second issue in relation to those specific causes of action. *See id.*

17

signed without her knowledge until mid-April of 2021 because King "first received a copy of the front and back of the check from the [USPS] in April 2021," and (2) did not discover the fact that her federal case had been dismissed until "mid-April 2021." *See Ortiz*, 589 S.W.3d at 131. Thus, despite evidence provided by Ogle that Cepeda hired an attorney "regarding [his] representation provided in a personal injury case," he has not established the accrual date of Cepeda's legal injury as a matter of law. King's letter is silent as to any specific details about why Cepeda sought new counsel nor does the letter provide any statements regarding the settlement check or about her federal lawsuit being dismissed. Any doubts in the trial court's granting of summary judgment must be resolved against Ogle's motion. *See Sotelo*, 281 S.W.3d at 80 (holding that summary judgment based on statute of limitations was improper when a fact question as to when plaintiff should have discovered her cause of action existed). We conclude that reasonable minds could differ about when Cepeda knew or should have known through the exercise of reasonable diligence about her legal injury and, therefore, Ogle has not established the accrual date of Cepeda's legal injury as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Mustafa*, 650 S.W.3d at 765; *Sotelo*, 281 S.W.3d at 82. Because Cepeda's affidavit raises a genuine issue of fact regarding application of the discovery rule, we also conclude that the trial court erroneously granted Ogle's motion for summary judgment based on his assertion of the statute of limitations with respect to Cepeda's claim of legal malpractice. Cepeda's second issue is sustained.

## C.    Service of Citation

Ogle argues that the "motion for summary judgment was based upon the ground that Cepeda's claims were barred by the applicable statute of limitations because she

18

failed to exercise due diligence with regard to . . . service on [him]." Ogle argued this same point in his combined motion for summary judgment and severance, asserting that "[Cepeda] failed to use due diligence in the service of citation." We note that Cepeda's affidavit contains no statements pertaining to due diligence.

Texas law provides that "while service follows filing, both are prerequisites to 'bringing' the suit. The suit is not 'brought,' and the statute of limitations is not satisfied, until the plaintiff achieves *both* steps." *Tanner*, 689 S.W.3d at 300. In general, if Cepeda's petition was timely filed but Ogle was served outside of the limitations period, Cepeda would be required to show that she exercised due diligence in executing service on Ogle to defeat a limitations defense. *See Ashley*, 293 S.W.3d at 179. Cepeda states in her affidavit that she did not learn about the settlement check until "mid-April 2021." If we assume that the two-year limitations period was tolled until "mid-April 2021," Cepeda would not be required to prove diligence unless she served Ogle after "mid-April 2023." In this scenario, the April 14, 2023 date of service may not fall outside the two-year limitations period. *See id.* Consequently, Ogle has not definitively shown that service was not timely to trigger Cepeda's burden to prove diligence. *See id.* (providing that a plaintiff must prove diligence only when a defendant was pleaded the defense of limitations and shown that service was not timely). We conclude that the trial court erred in granting Ogle's motion for summary judgment to the extent it impliedly found that Cepeda failed to produce evidence of due diligence to raise a fact question as to that issue.

## V.    CONCLUSION

We reverse the portion of the summary judgment order dismissing Cepeda's legal malpractice claim and remand this cause to the trial court for further proceedings

19

consistent with this opinion. We affirm the judgment in all other respects.

CLARISSA SILVA
Justice

Delivered and filed on the
21st day of November, 2025.